## JOHN T. CARLISLE v. THE STATE.

*No. 104. Decided February 11.*

1. **Principals and Accomplices—Punishment.**—In this State there is no difference between the punishment of an accomplice and a principal, because the crime is the same, and the legal maxim, " Qui facit per alium facit per se," is of universal application both in civil and criminal cases.

2. **Jurisdiction of Acts Committed by an Accomplice in Another County.**—Where all the acts constituting the defendant an accomplice were committed in the county of C., but the homicide was committed by the principal in the county of G., *held*, that the District Court of G. County had jurisdiction to try the accomplice for the murder committed by the principal in that county.

APPEAL from the District Court of Grayson. Tried below before Hon. T. J. BROWN.

Omitting formal parts, the charging part of the indictment is as follows, viz.: " That in said county of Grayson and State of Texas, on the 28th day of April, A. D. 1892, one Charles Luttrell did, with malice aforethought, kill W. T. Sharman, by then and there shooting him with a shot gun; and the grand jurors aforesaid upon their oaths do further present in said court, that one John T. Carlisle, on the 25th day of April, A. D. 1892, prior to the commission of said offense by the said Charles Luttrell as aforesaid, in the county and State aforesaid, did unlawfully and willfully, and of his malice aforethought, advise and encourage the said

Charles Luttrell to commit the said offense, and did prepare and furnish arms and aid to the said Charles Luttrell for the purpose of assisting the said Charles Luttrell in the commission and execution of said offense; the said John T. Carlisle not being present at the commission of said offense by the said Charles Luttrell; against the peace and dignity of the State.''

At the trial the verdict and judgment found the defendant guilty as an accomplice to murder in the first degree and assessed the punishment at death.

This is a companion case to that of Charles Luttrell v. The State, ante, page 493, and that case is referred to as containing a fuller exposition of some of the testimony upon points which were involved in both cases.

The evidence in the case is substantially as follows: In the city of Denison, county of Grayson, State of Texas, between the hours of 1 and 2 o'clock a. m., on the 28th day of April, 1892, W. T. Sharman, then lying in bed with his wife and infant child, was fired upon with a shot gun over the top of a window, which had been lowered about six inches, by a person standing upon a ladder placed against the house on the outside; that twelve buck shot entered his person, and that from the effects of such shot he instantly died. During the day of the 28th the stock of a shot gun was found in a vacant lot a few blocks from where the killing was done, and between deceased's house and the Union Depot. A short distance further on the barrels of a double-barreled shot gun were found; the barrels had one empty shell and one loaded shell in them. The loaded shell contained twelve shot, which were of similar size of those extracted from the person of W. T. Sharman by Dr. W. T. Boothe, and exhibted in court. It was proved, that about the 1st of April, 1892, Charles Luttrell and J. F. Fogg were in the city of Denison together; that Luttrell went to the express office in Denison and got therefrom a box containing a gun, the said box having been shipped from McKinney, Collin County, Texas, and was addressed to '' C. Luthell,'' but was signed for by Luttrell in his own name of C. Luttrell. He took the box to a pawnbroker shop, and there opened it and pawned the gun for $8, signing his full name, Charles Luttrell, on the pawn ticket; the gun was redeemed on Tuesday, April 26, 1892, and this ticket was returned to the broker that morning.

After pawning the gun Luttrell went to Fort Worth, and from there to Vernon, where he worked at his trade of blacksmithing until the 23d day of April, 1892, on which day he returned to Fort Worth, and on Monday, April 25, he went to Denison.

April 26, 1892, John Poe, alias Joe Brooks, was in Denison, and on that and the following day made inquiries about Sharman, and located his (Sharman's) dwelling house. He went to Taylor & Sharman's blacksmith shop, and made Sharman's acquaintance, and got Sharman to make him a pair of clamps, representing himself to be a dealer in horses. J. F.

Fogg was in Denison on the evening of April 27, about the time the killing was done, or immediately after a hard rain fell in Denison.  J. F. Fogg and Charles Luttrell were seen at the depot in Denison about 4:30 o'clock on the morning of the 28th; their shoes were muddy and their clothes wet.  They took the train for Fort Worth.  The train was due to leave at 4:30 a. m., but was a little late on that morning.  Two days later Luttrell went to Nashville, Tennessee, where J. M. Brown, who resided at Fort Worth, was with his racing outfit; from there he went with Brown to Chicago.  From Chicago Brown sent him to Lake Charles, Louisiana, where he remained a few weeks under an assumed name; from Lake Charles he went to New Orleans; and from New Orleans he went, in September, by Brown's direction, to Gonzales County, Texas, with a letter of introduction from Brown to W. E. Jones, by whom he was arrested and placed in jail, Brown having been killed in Chicago two or three days previously.

In 1880, in Lee County, Texas, J. M. Brown then being sheriff of that county, one Sam Sparks was murdered in the town of Giddings, in the street at night.  In 1887 or 1888, Brown then having moved to Fort Worth, indictments were found against one Ed. Myers and the defendant in this case, J. T. Carlisle, for the murder of Sparks.  At the time of the killing of Sparks Ed. Myers was a deputy of J. M. Brown.  There was a deadly enmity existing between Brown and Sparks.  Carlisle and Sparks were friendly, as were Carlisle and Brown.

In the fall of 1888 Myers was tried upon said charge, found guilty, and sentenced to the penitentiary for the term of twenty years.  Upon this trial W. T. Sharman testified, that he was an eye-witness to the killing of Sparks.  That he was standing in a few feet of Sparks when he was killed; that Carlisle and Sparks were walking arm in arm towards Sparks' horse, which was hitched near by, and that Myers slipped up behind them, and the night being excessively dark, that he stooped to get Sparks' head above the line of the horizon, and fired a pistol directly at Sparks' head, the ball entering the base of the brain and ranging upward and forward; that Sparks fell dead; that Carlisle and Myers ran away; that he recognized Carlisle by his voice, and Myers by the light of the pistol flash; that he had not told of it before for fear that his own life would be in danger.  There was no other witness who professed to have seen the killing, or who connected Carlisle with it.  J. M. Brown was shown to have been a desperate and dangerous man, who had no regard for human life, and hesitated at nothing to secure revenge, and would employ agents to carry out his bloody schemes.  The defendant Carlisle left Lee County in 1882, and for the last eight years resided the greater part of the time at Lebanon, Collin County, Texas, where he had a good reputation and was considered an honest, hard working man.

The gunstock and barrels found at Denison on the day after the kill-

ing were produced in court, and substantially, not absolutely, identified as a gun which Carlisle had at Lebanon in the spring of this year.

Carlisle was arrested at Hot Springs, Arkansas, in the early part of 1891, on the charge of killing Sparks. At the May Term of the court in Lee County, in that year, the case was continued by the State, and Carlisle admitted to bail, the bail being furnished by business partners of J. M. Brown, at Fort Worth. At the November Term, 1891, of the court, in Lee County, Carlisle did not appear, and his bail was forfeited, but the forfeiture set aside upon a showing that Carlisle was sick in Fort Worth, and unable to be removed. Sharman was present in Lee County at both said terms of court. After Carlisle's recovery, about December 1, 1891, he was rearrested and taken to Lee County. He again gave bond, with the same bondsmen, and on the 26th of December, 1891, went to Lebanon, Collin County, and went to work in the blacksmith shop with K. H. Anderson. He remained there without any absences till he started to Giddings, April 22, 1892, to attend his trial, which was set for the second Monday in May, 1892.

W. E. Jones, testified: That he was sheriff of Gonzales County, Texas, and that he knew Charles Luttrell. First saw him in Gonzales County, last September. He came there to see me. I had a warrant for his arrest for the murder of W. T. Sharman. He thought I was his friend, and I talked with him about three hours before I arrested him. He told me that he killed Sharman. That he put a ladder up the side of the house, and fired over the top of the window. That after he fired Sharman said, "Mama," and spoke no more. He first said Fogg was with him, afterwards that Poe was with him. I called his attention to this contradiction, and he said, "Well, they think it was Fogg, and so long as they are after the wrong man they won't get the right one." I asked him what Carlisle had to do with it, and he replied, "Nothing in the world." I then arrested him, and put him in jail at Gonzales, and telegraphed to the sheriff of Grayson County.

W. M. Fox testified: That on the 10th of February defendant told him that he had two men he wanted killed, and that there was money in it; $3000 on the head of one and $500 on the other. He said he had a friend in Tennessee who wanted Sparks killed, and the other fellow that he wanted killed was named Sharman, and that he lived in Denison. That he would pay $500 to have him killed, as he was a witness against him and was going to swear him into the penitentiary. The witness said that he warned Sparks and Sharman that they were in danger, and told the sheriff of Lee County that he would get the money without killing Sparks. That he was mad because Carlisle had made him such a proposition, and that he wanted revenge, and intended to get the $3000 without killing Sparks.

The witness D. C. Lee testified, in substance: Fogg Took dinner at his

restaurant in Fort Worth on the 24th day of April. That Fogg told him, witness, that he, Fogg, was going to Giddings to attend Carlisle's trial for murder. That Carlisle was as innocent as an unborn babe, but that they were going to hang him. He said, "There is a son-of-a-bitch at Denison who is going to swear his life away. Carlisle took him up a poor boy, and learned him a trade and made a man of him. Any damned son-of-a-bitch that would do such a thing ought to be killed." (This conversation was objected to by defendant as incompetent, irrelevant, and immaterial, and he reserved a bill of exceptions to its admission by the court.)

Dick Harrison testified, substantially, as did the witness Lee, and defendant reserved a bill of exceptions to his testimony.

The witnesses Carlyle, Spradling, Taylor, Grant, Massie, and Scarborough testified to threats made by defendant against deceased, to the effect that if he could get deceased out of the way he could beat his case. That Sharman never would appear as a witness against him, etc.

To Dave Sharman defendant said, "If your brother comes down to testify against me this fall, I will send him over the river before I go."

Defendant testified as a witness in his own behalf. He denied positively that he had made any of the threats or statements attributed to him by the witnesses. Stated that he got acquainted with Luttrell in November, 1891, in Fort Worth. That he did not see him from that time until he met him at Mrs. Brown's on April 24. That while in Fort Worth in November he had borrowed a gun from Fogg. That in March Fogg wrote him to send the gun to "C. Luthel," Denison. Did not know who "C. Luthel" was; had no idea it was C. Luttrell. Did not know why he wanted it sent to Denison, but it was Fogg's gun, and I would have sent it to anybody that he told me to. The gun found at Denison was here shown to witness, and he said, "This is the same make of a gun as that I had, though that was not broken like this." He stated, "I had nothing to do with the killing of Sharman whatever, and no knowledge of it until after it occurred."

*John F. Crowe,* for appellant.—1. The indictment is duplicitous. Penal Code, art. 79; Gould's Pleading, chap. 8, sec. 1; 4 Am. and Eng. Encyc. of Law, 755.

2. The indictment charging defendant as an accomplice alleges no time at which the offense was committed by Luttrell, the principal. 10 Am. and Eng. Encyc. of Law, 587, 588.

3. The indictment is insufficient, in that it alleges no venue, and states no place at which defendant is alleged to have done the things charged against him as an accomplice. 10 Am. and Eng. Encyc. of Law, 587, 588.

4. The indictment is insufficient, because it does not allege that defendant did prepare and furnish arms unlawfully, willfully, and of his

malice aforethought. Tompkins v. The State, 4 Texas Ct. App., 161; Copping v. The State, 7 Texas Ct. App., 61.

The rule announced in Henderson v. The State, 2 Texas Court of Appeals, 88, is not applicable to this case, whilst that announced in Dalton v. The State, 4 Texas Court of Appeals, 333, with regard to the charge of the court, when tantamount to an election as between counts, does apply, the charge of the court in the present case having instructed the jury that the preparing and furnishing the shot gun must have been done unlawfully, willfully, and with malice aforethought, though the indictment itself does not charge that it was so done.

The court erred in admitting, over defendant's objections, the conversations testified to by Lee and Harrison with Fogg, said conversations being had in the absence of defendant, there being no evidence so to connect the defendant with Fogg as to authorize his remarks and statements as evidence against defendant.

The court charged the jury in the tenth paragraph of his charge, "If you believe from the evidence that the defendant, John T. Carlisle, procured a gun and placed it, or caused it to be placed, in the office of the express company in Collin County, to be delivered to Charles Luttrell in Grayson County, and to be used by said Luttrell in the murder of W. T. Sharman in Grayson County, then in contemplation of law the act of the defendant in preparing and furnishing such gun was done in Grayson County, and he may be prosecuted in Grayson County for such act so done as aforesaid."

Defendant excepted to this as erroneous: 1. On the ground that there can be no such conclusion of law as that an act done in Collin County was done in Grayson County. Under our laws it is admitted that some offenses may by virtue of special statutes be prosecuted in counties other than that in which they were committed; but in these cases it is not because the law presumes the offense to have been committed at another place than where it actually was committed, but because the legislators thought that public justice or public convenience would be subserved by allowing a deviation from the ordinarily strict rules regulating venue; in such cases, the venue is laid in the county where the case is tried; "and to sustain the allegation of venue it shall only be necessary to prove that by reason of the facts existing in the case the county where such prosecution is carried on has jurisdiction." Code Crim. Proc., art. 224. But "the facts existing" in such cases are those by virtue of which a special statute says an offense committed in one place may be tried in another. There is no statute which says that in any case an act committed in one place has in law been committed in another.

Defendant's second objection to this paragraph is, that it erroneously states that defendant may be prosecuted in Grayson County for an act done in Collin County. Chapter 2, title 4, Code of Criminal Procedure,

treats " of the county within which offenses may be prosecuted," and arti-
cles 205–224 give a variety of cases in which the offense may be prosecuted
in counties other than where committed; but outside of the cases there
specified, article 225 governs, which is as follows:  " In all cases except
those enumerated in previous articles of this chapter, the proper county
for the prosecution of offenses is that in which the offense was committed."
The offense with which this defendant is charged is the preparing and
furnishing arms to Charles Luttrell; every act done by this defendant,
which was and is the sending of a gun to McKinney to be forwarded by
express to C. Luthel at Denison, was done in Collin County, and unless
there be some special statute authorizing a different forum, he must be
prosecuted in Collin County.

What article in the chapter above cited can be construed to cover this
case?  If not article 214, then certainly not any.  But article 214 only
provides, that if a person receive an injury in one county and dies by
reason of such injury in another, he may be tried in either of such
counties.  Sharman received no injury in Collin County.  Sharman re-
ceived no injury from Carlisle.  All that was done by Carlisle was done
in Collin County before—a full month before—Sharman was injured at
all.  Surely neither the letter nor the spirit of article 214 covers such a
case as this, and Carlisle could only be tried for his alleged offense in the
county where his offense was committed.

*R. L. Henry,* Assistant Attorney-General, for the State.—1. The in-
dictment contains but one count.  It does not allege, as contended by
appellant, two or more offenses.  It alleges but one offense, accomplice
to murder.  It does allege several facts, a part or all of which would con-
stitute that offense.  It is sufficient and in conformity with established
precedents.  Willson's Crim. Forms, Nos. 533, 536; Cook's case, 27 Texas.
Ct. App., 239.

2. The declarations of Fogg, testified to by Harrison and Lee, were
properly admitted.  The acts and declarations of the conspirators were
so closely connected with the circumstances establishing a conspiracy as
to make them both competent and admissible.  Cox et al. v. The State, 8
Texas Ct. App., 254; Smith v. The State, 21 Texas Ct. App., 96; Harris
v. The State, ante, 411.

The court did not err in the tenth paragraph of the charge complained
of.  The charge complained of is the law.

First.  The act of the agent is the act of the principal, is a principle of
law rudimentary in its character.  If the appellant delivered the gun to
a carrier in Collin County, to be by him delivered to Luttrell in Grayson
County, then the carrier was the agent of appellant, and through this
agent appellant delivered the gun to Luttrell in the county of the prose-
cution, Grayson.

Second. It is objected that appellant is prosecuted in Grayson County for an act done in Collin County. The venue of the offense with which appellant was charged, and of which he was convicted, was properly laid in Grayson County. . Appellant is not charged with any such crime as furnishing a gun with which to kill a man. There is no such offense denounced by the statute. The crime he is charged with is his participation in the murder of Sharman—his being a party to that murder. Appellant might express guns to Denison every day for a year for the avowed purpose of having Sharman killed with them, and yet be guilty of no offense; but whenever one of his confederates takes the gun and kills the man, then he becomes guilty of the crime, What crime? Furnishing a gun? No. Killing a man—murder; and not being present, an accomplice to murder. Sharman was murdered in Grayson County. Article 225, Code of Criminal Procedure, provides that this offense shall be prosecuted in the county in which it was committed, and the proper court of Grayson County has jurisdiction to try all the parties to the offense.

HURT, Presiding Judge.—In 1880, in Lee County, Texas, one Samuel Sparks was murdered in the town of Giddings, at night. J. M. Brown was sheriff of said county. In 1887 or 1888, Brown having moved to Fort Worth, indictments were presented against Ed Myers and J. T. Carlisle for the murder of Sparks. At the time of the killing Ed Myers was deputy sheriff for Brown. In the fall of 1888 Myers was tried, found guilty of murder in the second degree, and sentenced to twenty years in the penitentiary. On the trial of Myers, W. T. Sharman, the only eye-witness to the killing, testified, that he " was an eye-witness to the homicide of Sparks; that he was standing within a few feet of Sparks when he was killed; that Carlisle and Sparks were walking arm in arm toward Sparks' horse, which was hitched near by, and that Myers slipped up behind them, and the night being dark, he stooped to get Sparks' head above the horizon, and fired a pistol directly at Sparks' head, the ball entering the base of the brain, and ranging upward and forward; that Sparks fell dead, whereupon Carlisle and Myers ran away; that he recognized Carlisle by his voice.'' There was deadly enmity existing between J. M. Brown and Sparks.

In the city of Denison, Grayson County, between the hours of 1 and 2 o'clock a. m. on the night of the 28th of April, 1892, while lying in bed with his wife and infant child, W. T. Sharman was shot with a shot gun by some person standing upon a ladder placed against the house, shooting over the top of the window sash, which had been lowered about six inches. Charles Luttrell was indicted as principal, tried, and convicted of murder of the first degree, with the death penalty; appealed to this court, and the judgment was affirmed.

On May 25, 1892, John T. Carlisle was indicted, being charged as an accomplice also, for the murder of W. T. Sharman; was on the 28th of October, 1892, tried and convicted of murder in the first degree, with the death penalty assessed against him also. From this conviction and judgment he appeals.

The acts constituting appellant an accomplice occurring in Collin County, counsel for appellant contends that Grayson County, the county of the homicide, was without authority to try the case. If an accomplice to a felony be guilty of a distinct offense from the felony committed by his principal, the position of counsel is well taken.

We have no definition of a crime named or called "accomplice," but we are informed by our code what acts and things will make a person doing them an accomplice to all felonies to which there can be an accomplice. We are aware that there are numerous opinions of learned courts strongly intimating that an accessory before the fact (our accomplice) is guilty of a distinct offense from that of his principal. We desire to notice the reason or legal ratiocination of these opinions.

The following proposition is supported by a strong line of authorities: Accessory before the fact in one State to crime committed in another can not be punished in the State where the substantive crime is committed. The reasoning by which this proposition is sustained is, that as the acts constituting a person an accessory occurred in a State other than that in which the principal committed the crime, the State of the substantive crime can not punish those acts or the perpetrators, because done beyond the jurisdiction of the State in which the crime is committed by the principal.

Let us examine this subject, in the light of the same authorities which support the above proposition, a little further. A lives in Texas. He procures B, who also lives in Texas, to go to Missouri and there commit an act which is a felony in Missouri. B is innocent of anything wrong in what he does. These same authorities hold that Missouri would have authority to try and punish A. Upon what ground? Because A would be the principal. Again, A employs B to go to Missouri, and there commit a misdemeanor. B, with full knowledge of the criminal intent of A, would be guilty as a principal, and, as it was a misdemeanor, all would be principals, and Missouri would have authority to punish A, when in fact A had done no act whatever in Missouri, except through B. Again, A sends B to Missouri, armed and equipped for the purpose of murdering C, being instigated thereto by A. Missouri would not have authority to try and punish A, because all his acts were done in Texas, and because he was accessory and not principal. Now for the dilemma. Suppose Missouri should by statute make accessories before the fact principals, as several States have done, then she would have authority

to try and punish A for the murder of C, when A had done no act in Missouri personally, acting alone through his guilty agent, B. What is the result of such doctrine? It is that the power or authority to punish acts committed beyond the border of the State, which are crimes within the State, depends upon technical distinctions between felonies and misdemeanors, accessories and principals, or whether the agent was guilty or innocent, and not upon the fact that the criminal act was or was not committed in the State.

There is another line of authorities resting upon solid foundation. The doctrine is this: (That distinctions between accessories and principals rest solely in authority, being without foundation either in natural reason or the ordinary doctrine of law; for the general rule of law is, that what one does through another's agency is to be regarded as done by himself. In this State there is no distinction between the punishment of an accomplice and a principal. Why? Because the crime is the same. In morals there are circumstances in which we attach more blame to the accomplice than to his principal; as when a husband commands his wife, or master his servant, to do for his benefit a criminal thing, which in his absence is done reluctantly, through fear or affection overpowering a subject mind.) That the crime committed by the accomplice is the same as committed by his principal is evident. This proposition rests upon solid legal ground. In 1 Broom's Legal Maxims (second edition), 643, we find this maxim: " The principle of common law, 'qui facit per alium, facit per se,' is of universal application in both criminal and civil cases." If appellant be guilty, of what offense is he guilty? He is guilty of murder of the first degree. Why is he guilty of murder of the first degree? Simply because he, with his malice aforethought, expressed through his agent and tool, Luttrell, killed W. T. Sharman. He is guilty because Luttrell's act was his act, Luttrell being his agent Appellant is guilty of the murder of Sharman in Grayson County, though the acts constituting him an accomplice may have all occurred in Collin County. Why? Because when his agent Luttrell shot and killed Sharman in the city of Denison, Grayson County, it was appellant also, who, through Luttrell, shot and killed him in Grayson County

The correctness of this doctrine is clearly supported in the death of Uriah, which was caused by David. The Lord, speaking through Nathan, said to David: " Wherefore hast thou despised the commandment of the Lord, to do evil in his sight? Thou hast killed Uriah, the Hittite, with the sword, and hast taken his wife to be thy wife, and hast slain him with the sword of the children of Ammon." Now, David was not present when Uriah was killed. David did not with his own hands slay Uriah with a sword, but when Joab placed Uriah in a position in which death was inevitable, and thereby had him killed, under the command of David, David killed Uriah with a sword just as if he had slain him with his own

hands.  We are of opinion that the offense of the accomplice and his principal is the same, and, if at all, his crime was murder of the first degree, committed in Grayson County, and hence the venue of the case was in Grayson County.

Some further observations on this subject:  We desire to call attention to the very wise remark of Judge Marcy in People v. Mather, 4 Wendell, 229.  He says:  "Writers on criminal law make some difference between the offense of principal and accessory, but it is chiefly as to the order and mode of proceeding against them."  By statute of New York it is provided, that all suits, informations, and indictments for any crime or misdemeanor, murder excepted, should be brought within three years after its commission.  The word "murder" was held to include as well accessories before the fact as principals.  If an accomplice is guilty of a distinct felony from that of his principal, then a prosecution for being an accomplice to murder is barred by three years, for such an offense is not named in the statute regulating limitations.  The indictment is sufficient, and not obnoxious to the objections made to it.  The evidence complained of, under the circumstances of this case, was admissible.  The evidence amply supports the verdict.  The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.