FLEMING *v.* STATE.*

·(Division A. April 26, 1926.)

[108 So. 143.   No. 25335.]

1. CRIMINAL LAW. *Accessory before fact may be convicted of higher degree than was party who actually committed the felony, if latter, on trial of former, is shown guilty of higher degree (Code 1906, section 1026 [Hemingway's Code, section 751]).*

Accessory before the fact to felony, who, by Code 1906, section 1026 (Hemingway's Code, section 751), is declared principal

may be convicted of a higher degree than that of which the party who actually committed the crime had previously been convicted, if on the trial of the accessory the other is proved to have been guilty of the higher degree.

2. HOMICIDE.  *Statement of defendant that he hoped S. would kill L. held admissible as lending color to, and explaining, defendant's acts shortly thereafter.*

Statement of defendant, when informed of threat of S. to kill L., that he hoped S. would kill L. held admissible as lending color to, and explaining, defendant's acts shortly thereafter in borrowing a gun and delivering it to S., and following L. to point where S. killed him.

3. HOMICIDE.

Defendant, having been convicted of murder, may not complain of any error in instructions on manslaughter not misleading the jury.

---

*Corpus Juris-Cyc References:    Criminal Law 16CJ, p. 121, n. 6; p. 143, n. 54; p. 144, n. 61; p. 146, n. 97; 17CJ, p. 348, n. 89.  Homicide 30CJ, p. 198, n. 6, 7; p. 447, n. 60;  Offense of accessory before fact, see note in 33 L.R.A. (N.S.) 334; 1 R.C.L. 145; 1 R.C.L. Supp. 49.

APPEAL from circuit court, Winston county.

HON. T. L. LAMB, Judge.

Roosevelt Fleming was convicted of murder, and appeals.  Affirmed.

*Broom & Gober* and *L. H. Hopkins,* for appellant.

The theory of the appellant is that every instruction given for the state defining murder and authorizing the finding of a verdict for murder and prescribing the penalty is error, because the defendant was an accessory— if he was anything—and in no event could he be convicted of a higher offense than the principal.  Therefore, any instruction which authorized a conviction for murder and any instruction which defined murder were errors.

Section 751, Hemingway's Code provides that an accessory before the fact to a felony shall be deemed and considered a principal and shall be indicted as such and punished as such, but this section does not change the

identity of an accessory to that of principal, but merely prescribes the method of precedure against them and the punishment for them.

If he is an accessory, then to what crime is he an accessory? He must of necessity be an accessory to the crime committed by the principal. The crime of the principal was manslaughter. "An accessory follows, like a shadow, his principal." 1 Bishops New Criminal Law, p. 406, sec. 666. "Without a guilty principal, there can be no accessory. Not even can the accessory be convicted of an offense in a degree higher than that of a principal." 1 Bishops New Criminal Law, p. 406, sec. 666, par. 2. See also Broom Leg. Max. (2 Ed.), 374, 4 Bl. Com. 36, etc.; *Bowen* v. *State,* 25 Fla. 645; *Armstrong* v. *State,* 28 Tex. App. 526; *Territory* v. *Dwenger,* 2 Mex. (New) 73; *State* v. *Mosely,* 31 Kan. 355; *Buck* v. *Com.,* 107 Pa. 486; *People* v. *Collins,* 53 Cal. 185; *Harper* v. *State,* 83 Miss. 402, 35 So. 572; *Thomas* v. *State,* 73 Fla. 115, 74 So. 1; *Osborn* v. *State,* 99 Miss. 410, 52 So. 55; *Trazzo* v. *People,* 117 Pac. 150; *People* v. *Jordan,* 91 N. E. 482, 244 Ill. 386.

However, there is some authority to the contrary. *State* v. *Patterson,* 52 Kan. 335, 34 Pac. 784. But the great weight of authority is that the punishment of the accessory is limited to that of the principal.

Now we anticipate that the answer may be that the appellant was in fact a principal and not an accessory before the fact. Under the statute the punishment is the same in either case, but if it be argued that our reasoning does not apply because he is a principal and not an accessory, then he must stand or fall on the overt acts committed.

Presumptions are in favor of the appellant and not against him. He is presumed not to have aided and encouraged and incited him. At best and stated most strongly for the prosecution it is circumstantial evidence of an agreement or conspiracy or of aiding and abetting. The fact that appellant borrowed the gun is merely a

circumstance connecting him with the crime. But circumstantial evidence will not warrant a conviction unless it excludes every other reasonable hypothesis. It is a reasonable explanation and hypothesis that he borrowed the gun for protection because of the murderous assault made on White by Wooten and because of the threats uttered by Wooten against White. Not only is it reasonable but it is uncontradicted and true. The amendment to the instruction for the defendant was in direct conflict with a most recent utterance of this court in *Crawford* v. *State,* 133 Miss. 147, 97 So. 534.

But it may be contended that inasmuch as this amended instruction was not used on account of the amendment, then no harm came of the error; but that position is untenable. The error is in this: Nowhere else in all of the instructions for the state and the defendant is there any instruction telling the jury that White must have been influenced by or known of the state of mind that possessed Fleming. This instruction without the amendment did tell them the law.

Now on what theory was it admissable to show by the witness Prisock that appellant told him that he, appellant, hoped White would kill Wooten? Evidently on the theory that it showed the intent of the appellant, because White could not have been encouraged and incited by something he did not hear and did not know existed, and the court said in the Crawford case that even if he was there with the intent to help if necessary, he was not an aider and abettor unless his intentions were known to the perpetrator of the crime. So far as the record shows, White, the perpetrator, did not know of his intentions; therefore, this was palpable error to admit this testimony. This error cannot be cured. The instruction without the amendment should have been given. It was error to refuse it without the amendment. It was error to admit this evidence, harmful, reversible error. The intent of the appellant was not material unless it was communicated to the perpetrator.

Inasmuch as the perpetrator was convicted of manslaughter, no conviction can be had of the appellant because there cannot be an accessory to the crime of manslaughter. "Manslaughter does not admit of accessories inasmuch as it is of the essence of the offense that it shall have been committed without premeditation or pre-arrangement." 13 R. C. L. 726; *State* v. *Putnam,* 18 S. C. 175, 44 Am. Rep. 569; *Jones* v. *State,* 13 Tex. 168, 62 Am. Dec. 550.

*J. A. Lauderdale,* Special Assistant Attorney-General, for the state.

I. One who aids and abets the commission of a crime is a principal and should be indicted. *Beck* v. *State,* 69 Miss. 217; *Wynn* v. *State,* 89 Miss. 260; *Kittrell* v. *State,* 89 Miss. 670.

II. Appellant assigns as error the modification by the court of the fifth instruction asked for by defendant. This instruction as modified correctly stated the law. *McCarty* v. *State,* 26 Miss. 299; *McCoy* v. *State,* 91 Miss. 247; *Dean* v. *State,* 85 Miss. 40.

III. The testimony of Jess Prisock detailing a conversation between him and Shirley White with reference to White's trying to borrow a gun, his threats to kill deceased and also the conversation between Prisock and appellant with reference to White's threats and intentions to kill deceased were testified to before the jury over the objection of defendant and appellant assigns the introduction of this testimony as error.

White had made threats to Prisock that he would kill Wooten and these threats which were conveyed to appellant were competent to show that Fleming aided and abetted White to kill Wooten, with full knowledge that White intended to kill Wooten, that that was the purpose for which he wanted the gun. This was most certainly

competent on the trial of Fleming to show his guilty knowledge that White wanted the gun to kill Wooten and for no other purpose. As appellant furnished the gun with the full and complete knowledge that it was to be used to commit murder, and murder was actually committed by the use of said gun, he is just as guilty under the law of murder as he would have been if he had actually shot and killed deceased himself. *Cole* v. *State,* 4 So. 577.

The instruction in the case at bar required the jury to find that White murdered Wooten before they could consider the guilt of appellant at all. In other words, this instruction requires the guilty principal before the accessory or aider and abettor can be adjudged guilty. The jury had to believe and find that White murdered Wooten and that Fleming was then and there aiding, abetting and assisting in said murder before it could find him guilty. *Harper* v. *State,* 83 Miss. 402; *Dean* v. *State,* 80 Miss. 40; *Osborn* v. *State,* 99 Miss. 410.

IV. The testimony in this case was sufficient to sustain the verdict of guilty. The fact that White, the man who actually did the killing, was convicted of manslaughter makes no difference in this case. He might have been convicted as charged or he might have been acquitted. The verdict in that case in no way affects the verdict in this case. The jury in this case would have to believe and find that White had committed murder, but it was in no way bound by the verdict of the jury in the White case. The proof in this case shows that Fleming aided, abetted and assisted in this murder, and he is a principal indicted as such, proved guilty as such, and found guilty as such; and the guilt or innocence of his confederate or co-principal in no way affects his guilt or innocence. One who aids, assists, or encourages a murder is a principal and not an accessory, and his guilt in no way depends on the guilt or innocence, the conviction or acquittal of any other alleged party or parties in crime. *Dean* v. *State,* 85 Miss. 40.

COOK, J., delivered the opinion of the court.

At the July, 1925, term of the circuit court of Winston county the appellant was indicted and convicted of the murder of Lonnie Wooten, and was sentenced to the penitentiary for life, and from this conviction and sentence this appeal was prosecuted. On the day before the trial and conviction of this appellant, Shirley White was tried on an indictment charging him with the murder of the said Lonnie Wooten, and was convicted of manslaughter, and sentenced to the penitentiary for a period of twenty years.

The material parts of the testimony in the case at bar are substantially as follows: On the day of the killing, the appellant and Shirley White were engaged in hauling lumber from a sawmill to the town of Louisville, Miss.; each one driving a loaded wagon. Shirley White left his wagon in charge of the appellant, and went ahead to the home of one Jess Prisock, who lived on or near the road leading to Louisville. Prisock testified that Shirley White came to his home and tried to borrow a gun, saying that he and the appellant had found a squirrel and wanted to kill it; that he told him he had no gun, and White then said that he did not want the gun to kill a squirrel, but that he had had some trouble with Lonnie Wooten, and wanted to kill him, and that he was going to kill him if he had to go to town to get a gun; that White then proceeded along the road toward Louisville; that in a few minutes he saw Lonnie Wooten traveling in the same direction; that two or three minutes later the appellant came up having in his charge two wagons loaded with lumber; that he told the appellant that White had been there to borrow a gun with which to kill Lonnie Wooten, and the appellant replied: ''I hope he does,'' and then drove on toward Louisville.

This witness further testified that shortly after this conversation with the appellant, he, the witness, started to Louisville, and that he passed the appellant and White,

the appellant then being on his wagon, and White standing in a road which led from the main highway to the home of Mrs. Virgie Stark a short distance away; that he then saw Lonnie Wooten walking along the road about a quarter of a mile ahead of these wagons; that he soon caught up with Lonnie Wooten, and walked along the road with him; that when they reached a point something more than a mile distant from the place where he had passed White and the appellant, some one hailed them, and upon turning he saw White and the appellant rapidly approaching, walking side by side, while White had a shotgun; that, when they were near Wooten, White said to him: "If you want anything now, you can get it;" that the appellant, who was standing about two feet from White, turned so that he was facing him; and that White then fired one shot into Wooten's face, killing him instantly; that White and the appellant then went back in the direction from which they came, neither of their wagons being then in sight; and that at the time he was shot the deceased was not armed, and was making no demonstrations toward White or this appellant.

Mrs. Virgie Stark, who lived near the road along which these parties were traveling, testified that Shirley White came to her home a short while before the killing and requested her to loan him a gun to kill a squirrel, and that when she started to give him a gun he said that the truth was he wanted it to kill a negro with whom he had had some trouble, and that she then refused to let him have the gun.

Mrs. Ed Parks, who lived near this same public road, and between the home of Mrs. Stark and the town of Louisville, testified that a few minutes before the killing the appellant, Roosevelt Fleming, came to her home and requested her to loan him a gun for the purpose of killing a squirrel; that she loaned him a gun, and he paid her five cents for a shell; that a few minutes later she heard a gun fire, and shortly thereafter Shirley White returned the gun to her, it being 10 or 15 minutes from

the time the gun was loaned to the appellant until it was returned by White.

The principal ground for a reversal urged by counsel for the appellant is that the appellant was only an accessory, and could be convicted of no higher crime than the principal, and, since the principal had already been convicted of manslaughter, the instructions for the state defining murder and authorizing the finding of a verdict for murder were erroneous.

Section 1026, Code of 1906 (section 751, Hemingway's Code), provides that—

"Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not."

The appellant was indicted and proceeded against as a principal, but, if it be conceded that the testimony was insufficient to warrant a finding that he so "aided, assisted, and encouraged" in the killing as to render him a principal in the commission of the act, yet, if he be treated as an accessory only, there was no error in the instructions which authorized a conviction of murder. It was held in the case of *Osborne* v. *State,* 55 So. 52, 99 Miss. 410, that "the party who actually committed the felony must be proved guilty before evidence is admissible of the guilt of the accessories before the fact, though they are charged as principals," but the guilt of the accessory in nowise depends upon the previous conviction or acquittal of the principal. Upon the record before it, the jury charged with the trial of an accessory must determine the fact of the actual guilt of the principal, and in so doing it is in no way bound by the action of a former jury upon a different record. Through failure of proof or caprice of the jury the principal may have been convicted of an offense of lower grade or even acquitted, but this alone does not determine the question of the guilt or innocence of the accessory of

the crime charged. The actual guilt or innocence of the principal is the controlling fact, and, having determined that the principal is actually guilty of the crime charged, the accessory may be convicted and punished as a principal upon the proof that he aided, abetted, and encouraged the commission of the crime. This was exactly what the instruction complained of required of the jury. The instruction informed the jury that—

"If you believe from all the evidence in the case beyond a reasonable doubt that Shirley White did willfully, feloniously, and of his malice aforethought kill and murder Lonnie Wooten, and that the defendant, Roosevelt Fleming, was then and there aiding, abetting, and assisting the said Shirley White to take the life of the deceased, then you will find the defendant guilty of murder."

This instruction correctly states the law, and under the facts in evidence was properly given.

In criticism of this instruction the appellant refers to the case of *Harper* v. *State,* 35 So. 572, 83 Miss. 402, but there is nothing in the Harper case which conflicts with the views herein expressed. In that case the instruction under consideration informed the jury that, if they believed that McCormick "shot and killed" the deceased, and that Harper was present at the time of the killing, aiding and abetting McCormick in killing deceased, then he was guilty of murder. As said by the court in that case, "The error in this instruction is glaring and manifest." It made Harper guilty of murder, if McCormick "shot and killed" deceased, and he (Harper) aided and assisted therein, without regard to whether McCormick had committed any offense in shooting the deceased.

The appellant complains of the admission of the testimony of the witness Prisock to the effect that the appellant told him "that he hoped Shirley White would kill Lonnie Wooten." This statement of the appellant was made at the time he was informed that White had threatened to kill Wooten, and just a few minutes before he

142 Miss.—56.

borrowed the gun with which White killed Wooten a few minutes later, and we think it was admissible as lending color to; and explaining, his acts shortly thereafter in borrowing a gun and delivering it to White, and following the deceased to the point where he met his death.

It is difficult to conceive upon what theory the issue of manslaughter was submitted to the jury, but, since the appellant was convicted of murder, he cannot complain of the error, if any, in these instructions, as the jury was in nowise misled thereby.

We do not think there was any reversible error presented by any of the other assignments, several of which are based upon matters which do not properly appear of record. In our opinion, the testimony is sufficient to sustain the verdict, and no reversible error was committed in the admission or exclusion of testimony, or in the granting or refusal of instructions.

The judgment of the court below will, therefore, be affirmed.

*Affirmed.*