STATE OF WEST VIRGINIA

*v.*

PAMELA JEAN PETRY

(No. 14014)

Decided December 16, 1980.

*Leo Catsonis* for plaintiff.

*Chauncey H Browning,* Attorney General, *Gregory W. Bailey, Deputy* Attorney General, *Paula D. Dean,* Assistant Attorney General, for defendant.

NEELY, CHIEF JUSTICE:

This is an appeal by Pamela Jean Petry from a conviction in the Circuit Court of Mason County for breaking and entering. Among other points, she contends that the indictment charged her as being a principal in the first degree; that the evidence in the case showed that she was a principal in the second degree; and, that the trial court, under our holding in *State v. Bennett,* 157 W.Va. 702, 203 S.E.2d 699 (1974) erred in failing to direct an acquittal. We

agree that the trial court was incorrect in failing to direct a verdict of acquittal for the defendant; however, we take this opportunity to abolish the technical distinction between principals in the first and second degree insofar as that distinction must be observed in drafting an indictment. We also take this occasion to abolish the distinction between principals and accessories before the fact and, therefore, hold that a general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider or abettor or an accessory before the fact since, as we have acknowledged before, such technical distinctions serve no meaningful purpose to defendants and merely allow the guilty to go free. *State v. Fitch,* 164 W.Va. 337, 263 S.E.2d 889 (1980).

The defendant, Pamela Jean Petry, was convicted on the basis of an indictment which said:

> That Pamela Jean Petry on the _____ day of December, 1975, in the said county of Mason did unlawfully and feloniously break and enter a certain building, to-wit: known as Village Pharmacy, said building belonging to the West Virginia Telephone Company, Incorporated, a corporation, and said building then and there being in the lawful possession of Wolf-Newland Pharmacies, Incorporated, a corporation, and not a dwelling house or outhouse adjoining thereto or occupied therewith, with intent the goods and chattels of Wolf-Newland Pharmacies, Incorporated, a corporation, then and there in said building, to steal, take and carry away, against the peace and dignity of the State.

During the appellant's trial three other persons charged with committing the crime testified against the appellant; the testimony of all three indicated that at the time the crime was committed the appellant remained in the van which had transported them to the scene. She served as a look-out throughout the time the crime was in progress and

she never actually entered the pharmacy at the time the crime was being committed.

I

The common law draws a clear line between principals, the criminal actors who actually perpetrated the crime, and accessories before the fact, the criminal actors who conspired to commit the crime but were absent at its commission. Consequently the common law rules of pleading require that an indictment specifically charge an accused either as a principal or as an accessory before the fact. If the defendant were charged as a principal he could not be convicted upon proof that he was an accessory and vice versa. On the other hand, the common law did not require that an accused be specifically charged as a principal in the first degree, that is the criminal actor who perpetrated the crime, or a principal in the second degree, that is the criminal actor who aided or abetted and was actually or constructively present during the commission of the crime.

Our Court apparently confused these two common law rules of pleading when we held in *State v. Bennett, supra* that a defendant must be specifically charged as a principal in the second degree to be convicted as an aider and abettor. Since distinctions among criminal actors are now obsolete, as our analysis of the evolution of these distinctions will demonstrate, we take this occasion not only to overrule the requirement in *State v. Bennett* that principals in the first and second degree be specifically indicted as such, but also to overrule all our cases holding that a principal and an accessory before the fact must be specifically indicted as such. We believe that the defendant's right to be fully informed of the crime charged in the indictment under *W. Va. Const.*, art. III, sect. 14 will be fully protected, particularly in light of our liberalized rules on criminal discovery which are discussed *infra*.

We recently stated in *State v. Fitch, supra* that we preferred to have the Legislature eliminate the technical distinction between principals in the first degree and aiders and abettors. Believing that we cannot continue to

allow the guilty to go free on bare technicalities, we decide today to eliminate this absurdity in the common law ourselves. *Morningstar v. Black & Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979). We have never discussed the underlying rationale for these distinctions, *State v. Jones*, 161 W.Va. 55, 239 S.E.2d 763 (1977), although Judge Haymond has delineated the differences among criminal actors in his scholarly opinion, *State ex rel. Brown v. Thompson*, 149 W.Va. 649, 654-657, 142 S.E.2d 711, 715-717, *cert. denied*, 382 U.S. 940, 86 S.Ct. 392, 15 L.Ed.2d 350 (1965). Our examination of the origins of the distinctions among criminal actors reveals that the rule has endured because of repetition, not reason. Our conclusion that the distinctions among parties to a crime are an anachronism is hardly singular, although our method of remedying this disorder in the law may be.[1]

In order to discuss these distinctions we must accurately define the differences among the criminal actors. At common law the parties to a felony were divided into principals and accessories. The principals were divided into: (1) principals in the first degree who actually perpetrated the act; and, (2) principals in the second degree, known under early common law analysis as accessories at the fact, who were actually or constructively present at the scene of the crime and who aided or abetted directly or indirectly. The accessories were divided into: (A) accessories before the fact who conspired with the perpetrator but were not present during the commission of the crime; and, (B) accessories after the fact who rendered assistance after the crime was completed. R. Perkins,

---

[1] The problem has generally been solved by legislation. In 1861 an English statute abolished the procedural distinctions among criminal actors and provided that an accessory before the fact could be "indicted, tried, convicted and punished as if he were a principal felon." The Accessories and Abettors Act, 24 & 25 Vict. c. 94 (1861). By 1953, twenty-two states had enacted legislation that declared accessories before the fact to be principals. *See* Model Penal Code § 2.04, Appendix (Tent. Draft No. 1, 1953). Today "[v]irtually all states have now expressly abrogated the distinction between principals and accessories before the fact." W. LaFave & A. Scott, *Criminal Law* 500 (1972).

*Criminal Law* 643-44 (1969); W. LaFave & A. Scott, *Criminal Law* § 63 (1972); 4 W. Blackstone, *Commentaries on the Laws of England* 33 (1765); and, *State v. Scott*, 80 Conn. 317, 68 A. 258 (1907). We will consider only principals in the first degree, aiders and abettors, and accessories before the fact in felony cases, since the accessory after the fact, by virtue of his involvement after the completion of the felony, is not treated as a participant in the felony but rather as one who obstructed justice. W. LaFave & A. Scott, *supra*, at 496. Misdemeanors, on the other hand, "[d]id not admit of accessaries [sic] either before or after the fact," *United States v. Hartwell*, 26 F.Cas. No. 15, 318 p. 196 (C.C. Mass. 1869). *See* Note, "Accessory Before the Fact to Misdemeanor—A Legal Impossibility?" 74 *W.Va.L.Rev.* 402 (1972).

Under the English common law, at the time it influenced American law, all parties to a felony received the same penalty and nearly all felonies were capital crimes,[2] thus the distinctions among criminal actors arose to protect accessories from execution. *See* R. Perkins, *supra*, at 669, W. LaFave & A. Scott, *supra*, at 499. Courts have long acknowledged that this distinction was simply an artificial device designed to prevent excessive executions in felony cases. 2 J. Stephen, *History of the Criminal Law of England* 231 (1883). In searching for the rationale for these distinctions one court reasoned that, "distinctions between accessories and principals rest solely in authority, being without foundation either in natural reason or the ordinary doctrine of law; for the general rule of law is that what one does through another's agency is to be regarded as done by himself." *Carlisle v. State*, 31 Tex. Cr. R. 537, 546, 21 S.W. 358, 359 (1893). Thus, one can only reasonably

---

[2] In discussing the distinctions among principals and accessories, Sir William Holdsworth observed in *A History of English Law* Vol III, 309 (1903) that "the technicality and complexity of the rules upon this subject will bear comparison even with the rules of procedure which governed the working of the real actions. Though some of the points debated in the Year Books were settled in the later law, the complexity of the rules tended to increase in consequence of the provisions of the numerous statutes which created new felonies, and of the mode in which those statutes were interpreted by the judges."

conclude that these common law distinctions have been manipulated for several hundred years in the service of *ad hoc* justice at the expense of procedural rationality. Once, however, this irrational system had been firmly established, the effect, as in all areas where procedure is manipulated to achieve substantive results, was a great deal of *ad hoc* injustice.

The confusion that has been engendered by continuing to honor obsolete distinctions among criminal actors is best exemplified in the case at bar which involves the difference between a principal in the first degree and a principal in the second degree. In rare instances, some unusual statute has provided a different penalty for one of these than for the other, *State v. Woodworth*, 121 N.J.L. 78, 83, 1 A.2d 254, 258 (1938); *Rex v. Sterne*, 1 Leach 473, 168 Eng. Rep. R. 338 (1787), but our own statute, *W.Va. Code*, 61-11-6 [1923], holds that the punishment of principals in the second degree shall be the same as if the accused were principals in the first degree. The ludicrous point of the case before us is that the defendant can successfully defend against an indictment as a perpetrator by proving she was an aider and abettor and vice versa, which is morally absurd. Furthermore, it is a practical absurdity since a prosecutor may know that four persons committed a larceny together at a particular place but not know which of the four was the lookout before the evidence is developed during the trial.

As we noted at the outset, under common law it was not necessary for the defendant to be charged specifically as a principal in the first or second degree; a general allegation in the pleadings that the defendant was a principal was held to be sufficient. W. LaFave & A. Scott, *supra*, at 499. It was apparently well settled law in West Virginia that a joint indictment as principals in the first degree would sustain a conviction upon proof of the accused having been an aider and abettor until *State v. Bennett*, 157 W.Va. 702, 203 S.E.2d 699 (1974).[3] Under common law rules of pleading

---

[3] *State v. Haines*, 156 W.Va. 281, 192 S.E.2d 879 (1972) (joint indictment as principals in the first degree for armed robbery); *State v. Wamsley*, 109 W.Va. 570, 156 S.E. 75 (1930) (joint indictment as

even if the principal in the first degree were incorrectly named as the principal in the second degree and vice versa, both could be convicted under the indictment.[4] We changed the common law in *State v. Bennett* when we held in syl. pt. 7 that "[a]n aider and abettor, known in law as a principal in the second degree, cannot be convicted upon an indictment found against him solely as a principal in the first degree." While we noted in *Bennett* that the failure correctly to indict the defendant "is harmless only if one views the defendant's situation from the single perspective of punishment while presuming of his guilt," *Bennett, supra* 157 W.Va. at 708-09, 203 S.E.2d at 703, we now concur with the common law in finding that these distinctions are only technical and have no substantive value. Therefore, we overrule *State v. Bennett,* syl. pt. 7 and syl. pt. 9.[5]

## II

Having established that the historical foundation for the distinction among criminal actors has completely eroded, we consider it appropriate to abolish technical distinctions between accessories before the fact and principals that prior substantative law made necessary in an indictment.[6] As we noted earlier, many states have enacted statutes

principals in the first degree for rape); *State v. Powers,* 91 W.Va. 737, 113 S.E. 912 (1922) (joint indictment as principals in first degree for car theft).

[4] *Mackalley's Case,* 9 Coke 65b, 67b,77 Eng. Rep. 828, 832 (1611); *Neumann v. State,* 116 Fla. 98, 105, 156 So. 237, 240 (1934); *Reed v. Commonwealth,* 125 Ky. 126, 134, 100 S.W. 856, 858 (1907).

[5] We previously overruled syl. pt. 2 of *State v. Bennett* which concerned admissibility of co-conspirators' statements in *State v. Adkins,* 162 W.Va. 815, 253 S.E.2d 146 (1979).

[6] According to the legal encyclopedia:

It is the strict rule of the common law that one who participates in the commission of a crime as a principal must be charged as such in an indictment or information, and that one who aids and abets the commission of the offense as an accessory must be charged as such, and not as a principal. 41 Am. Jur. 2d Indictments and Informations § 153 (1968); *see* 42 C.J.S. Indictments & Informations § 260 (1944); 1A M.J. Accomplices & Accessories § 9 (1967).

abolishing or relaxing the common law rules regarding criminal actors.[7] Our own Court acknowledged over fifty

---

[7] For example, the United States Supreme Court documented in *Standefer v. United States*, 447 U.S. 10, 16-18 n.9, 100 S.Ct. 1999, 2004-2005 n.9, 64 L.Ed. 2d 689 (1980), that 33 states have enacted legislation providing that the acquittal of the actual perpetrator is not a bar to the conviction of one charged with giving him aid. *See* 1977 Ala.Laws, Act No. 607, § 425; Ariz.Rev.Stat. Ann. § 13-304(1) (1978); Ark.Stat. Ann. § 41-304 (1977); *see* Cal.Stat. ch. 99, §§ 11-12 (1850) (*see People v. Bearss*, 10 Cal. 68-70 (1858)); Colo.Rev.Stat. § 18-1-605 (1973) (*see Robert v. People*, 103 Colo. 250, 87 P.2d 251 (1938)); Conn.Gen. Stat. § 53a-9 (1979); Del.Laws (Rev.Code) §§ 2919-2921 (1852); Fla.Stat. § 777.011 (1976) (*see Butts v. State*, Fla.App., 286 So.2d 28 (1973)); Ga.Code § 26-802 (1978); Ill.Rev.Stat. ch. 38 § 5-3 (1972); Ind.Code § 35-41-2-4 (1979); Iowa Rev. Code § 4314 (1882) (*see State v. Lee*, 91 Iowa 499, 501-502, 60 N.W. 119, 120 (1894)); Kan.Gen.Stat. § 5180 (1889) (*see State v. Bogue*, 52 Kan. 79, 86-87, 34 P. 410, 412 (1893)); Ky.Stat. § 1128 (1903) (*See Commonwealth v. Hicks*, 118 Ky. 637, 642, 82 S.W. 265, 266 (1904); La.Rev. Stat.Ann. § 14:24 (West) (1974) (*see State v. McAllister*, La., 366 So.2d 1340 (1978)); Me.Rev.Stat. Ann., Tit. 17-A § 57; Mich.Comp.Laws § 767.39 (1968) (*People v. Smith*, 271 Mich. 553, 260 N.W. 911 (1935)); Miss.Code § 1026 (1906) (*see Fleming v. State*, 142 Miss. 872, 880-881, 108 So. 143, 144-145 (1926)); Mo.Rev.Stat. § 562.046 (1978); Mont.Codes Ann. (Penal Code) § 1854 (1895); Neb. Rev.Stat. § 28-206 (Cum.Supp. 1978) (*State v. Rice*, 188 Neb.R. 728, 199 N.W.2d 480 (1972)); N.H.Rev.Stat Ann. § 626:8 (1974); N.J.Stat.Ann. § 2C:2-6 (West 1979); N.M.Stat.Ann. § 30-1-13 (1978); N.Y.Penal Code § 29 (1895) (*see People v. Kief*, 126 N.Y. 661, 663-664, 27 N.E. 556, 557 (1891)); N.D.Rev.Codes § 8060 (1895); Okla.Stat. § 5523 (1890); Penn.Cons.Stat. 18 § 306 (Cum.Supp.1979); S.C. Code § 16-1-50 (*State v. Massey*, 267 S.C. 432, 229 S.E.2d 332 (1976)); S.D.Ann.Stat. § 8520 (1899); Tex.Penal Code § 7.03 (1974); Utah Comp. Laws § 4752 (1907); Wash.Code of Proc. § 1189 (1891) (*see State v. Gifford*, 19 Wash. 464, 467-468, 53 P.709, 710 (1898); and Wis.Stat. § 39.05 (1958).

Eleven other states have enacted statutes that modify the common law rule; these statutes have not been authoritatively construed on whether an accessory can be prosecuted after his principal's acquittal. *See Haw.Rev. Stat.* § 702-225 (1976); Idaho Code § 19-1431 (1979); Mass.Gen.Laws Ann. ch. 274 § 3 (1970); Minn.Stat. § 609.05 (1964); Nev.Rev. Stat. § 195.040 (1979); Ohio Rev.Code Ann. § 2923.03 (1979); Okla.Stat., Tit. 21 § 172 (1971); Ore.Rev.Stat. § 161.160 (1979); Vt.Stat.Ann., Tit. 13 § 3 (1974); Va.Code § 18.2-21 (1975); W.Va.Code § 61-11-7 (1977); and, Wyo.Stat. § 6-1-7114 (1977).

Only four states—Maryland, North Carolina, Rhode Island, and Tennessee—clearly retain the common law bar. *See State v. Ward*, 284 Md. 189, 396 A.2d 1041 (1978); *State v. Jones*, 101 N.C. 719, 8 S.E. 147 (1888) (interpreting N.C. Gen.Stat. & 14-15 (1969)); R.I.Gen.Laws & 11-1-3 (1956); *Pierce v. State*, 130 Tenn. 24, 168 S.W. 851 (1914).

years ago that the reasons for recognizing the distinctions among accessories and principals were questionable.[8]

We are assured that a general indictment will not prejudice the accused's constitutional right to be fully and plainly informed of the charges against him, in light of our liberalized rules regarding criminal discovery, *State v. Cowan*, 156 W.Va. 827, 197 S.E.2d 641 (1973); *State v. McArdle*, 156 W.Va. 409 194 S.E.2d 174 (1973), and in light of the United States Supreme Court pronouncement in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) that any matter known to the prosecution which is obviously exculpatory or relevant and favorable to the defendant must be made available to him. While it is still the rule that criminal discovery is solely within the discretion of the trial judge with only limited exceptions, *State v Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), we have held that facts and details concerning the State's case which are not required to be set forth in the indictment may be discovered by properly applying for a bill of particulars

---

The Model Penal code provides that an accomplice may be convicted "though the person claimed to have committed the offense . . . has been acquitted." § 2.06(7) and *see* comments Tentative Draft No. 1, May 1953, at 38-39.

[8] Judge Lively wrote in *State v. Powers*, 91 W.Va. 737, 746, 113 S.E. 912, 916 (1922):

It has been said that:

"The distinction between principals and accessories before the fact is in most cases a distinction without a difference, and often requires nice and subtle verbal refinements to express it. * * * It is supposed to have originated at a time when criminal lawyers puzzled their wits and taxed their ingenuity to invent metaphysical shades of distinction, such for instance as that between principals and accessories *at* the fact, which once existed but is now exploded. The distinction between principals and accessories before the fact is fast following its kindred technical refinement. *State v. Poynier*, 36 La. Ann. 572."

Some of the states have provided by statute that all parties to a felony, either before or at the fact, shall be principals; and under such statutes all parties, who at common law would be accessories before the fact to larceny, become principals, and may be convicted as such. California, Minnesota, Montana, Pennsylvania, and Texas have passed such statutes. However, in this state we still recognize the distinction between accessories and principals, and an acccessory to be convicted must be indicted as such.

under *W.Va. Code,* 62-1B-1 [1965]. *State ex rel. Whitman v. Fox,* 160 W.Va. 633, 236 S.E.2d 565 (1977). In addition, under *W.Va. Code,* 62-1B-2 [1965], the defendant may examine: statements made by him; reports of examinations and tests; and, books, papers, and tangible objects. Furthermore, criminal discovery is by no means limited to the items enumerated in that section, and "should not be limited, absent compelling reasons for its limitations." *State v. Sette,* 161 W.Va. 384, 242 S.E.2d 464, 470 (1978).[9]

Therefore, we overrule the distinctions among principals in the first degree, principals in the second degree, aiders and abettors, and accessories before the fact at the indictment stage and hold that a general indictment as a principal in the first degree shall be sufficient to sustain a conviction regardless of whether the evidence demonstrates that the defendant was a principal, aider and abettor, or accessory before the fact. In that regard we overrule: syl. pt. 2, *State v. Jones,* 161 W.Va. 55, 239 S.E.2d 763 (1977); syl. pt. 7, syl. pt. 9, *State v. Bennett,* 157 W.Va. 702, 203 S.E.2d 699 (1974); syl. pt. 3, *State ex rel. Brown v. Thompson,* 149 W.Va. 649, 142 S.E.2d 711, *cert. denied, Brown v. Thompson,* 382 U.S. 940 (1965); syl. pt. 4, syl. pt. 5, *State v. Roberts,* 50 W.Va. 422, 40 S.E. 484 (1901); syl. pt. 2, *State v. Lilly,* 47 W.Va. 496, 35 S.E. 837 (1900). We also overrule: *dicta* expressed in *State v. C.J.S.,* 164 W.Va. 473, 263 S.E.2d 899, 902 (1980); *State v. Fitch,* 164 W.Va. 337, 263 S.E.2d 889, 892 (1980); *State v. Nicholson;* 162 W.Va. 750, 252 S.E.2d 894, 896 (1979); *State v. Grimmer,* 162 W.Va. 588, 251 S.E.2d 780, 783 (1979); *State ex rel. Muldrew v. Boles,* 151 W.Va. 1033, 1044-45, 159 S.E.2d 36, 44-45 (1967); *Moore v. Lowe,* 116 W.Va. 165, 167, 180 S.E. 1, 1-2 *cert. denied,* 296 U.S. 574, 56 S.Ct. 130, 80 L.Ed. 406 (1935); *State v. Powers,* 91 W.Va. 737, 747, 113 S.E. 912, 916 (1922); and, *State v. Cremeans,* 62 W.Va. 134, 136, 57 S.E. 405, 405 (1907). Numerous other cases discuss the distinctions among criminal actors but it is not necessary to overrule them specifically.

---

[9] For an analysis of our liberalized rules on criminal discovery, *see* Note, "Criminal Procedure —Discovery—Movement Toward Full Disclosure," 77 *W.Va.L.Rev.* 561 [1975]; Survey of Developments in West Virginia Law 1975-1976, 78 *W.Va.L.Rev.* 570-74 [1976].

## III

In the case before us, however, the defendant was indicted and convicted under our previous common law which required that aiders and abettors be indicted as such. Well established rules prohibiting *ex post facto* changes in the criminal law require that our holding today apply only to those persons tried after the date on which this opinion is handed down since both substantive and procedural changes in the criminal law which inure to a defendant's detriment are proscribed under both State and Federal *Constitutions.* Pnakovich v. State Workmen's Compensation Commission, 163 W.Va. 583, 259 S.E.2d 127, 131 (1979). Accordingly, in the case before us it is necessary to reverse the circuit court and remand this case with directions to enter a judgment of acquittal.

*Reversed and remanded.*