625 S.E.2d 281

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Ronnie Lynn LEGG, Defendant Below, Appellant.

No. 32500.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 21, 2005.

Filed: Nov. 21, 2005.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellee.

Douglas H. Arbuckle, Esq., Lewisburg, for Appellant.

Justice STARCHER delivered the Opinion of the Court.

STARCHER, J.

The appellant, Ronnie Lynn Legg ("Mr. Legg"), was convicted by a jury in the Circuit Court of Greenbrier County, West Virginia, of the felony of "Wrongful Removal of Timber—More Than $1,000.00." *W. Va. Code*, 61–3–52 [2001]. Following his conviction, Mr. Legg moved for a new trial on the basis that the indictment was insufficient and the jury was wrongly instructed. Mr. Legg's motion for a new trial was denied and he was sentenced to one to two years in the penitentiary. The sentence was then suspended, and Mr. Legg was placed on home confinement. It is from this conviction that Mr. Legg now appeals.

Mr. Legg principally contends that the circuit court erred when it instructed the jury that they could find Mr. Legg guilty as a principal in the second degree, or "aider and abettor." We conclude that the circuit court did not err in giving the aiding and abetting instruction, and that this instruction did not invalidate Mr. Legg's indictment. We uphold Mr. Legg's conviction and affirm the circuit court in its refusal to grant Mr. Legg's motion for a new trial.[1]

I.

*Facts & Background*

On Saturday, July 20, 2002, Ronnie Legg joined his friend, Clinton "Bucky" Holland, on a farm owned by Holland's father. Legg and Holland were employed by David Hunter, who ran a timbering business. On the day in question, Mr. Holland had rented a

---

1. Mr. Legg also assigns as error the trial court's rulings relating to boundary evidence and the verdict form.

skid-steerer and a skidder from Mr. Hunter in order to do some work on his father's road. Mr. Holland also rented a chainsaw, telling Hunter that he planned to cut down some trees on his father's property. After joining Mr. Holland on the Holland property, Mr. Legg used the chainsaw to cut down two red oak trees that were growing on Josh Bruner's property, which adjoined the Holland property.[2] After the trees were felled, Holland helped Legg skid the trees over to the Holland property. The two men cut the trees into logs and took them to Jayfor Lumber, where Mr. Legg was paid $1,624.50, by check.

Several weeks later, Conservation Officer C.R. Johnson was contacted regarding the theft of the two trees from the Bruner property, close to the boundary line shared with the Holland property. Officer Johnson obtained the names of Ronnie Legg and Bucky Holland from Jayfor Lumber, and proceeded to take a statement from Mr. Holland. On the basis of this statement, the State obtained an indictment against Mr. Legg.

Mr. Legg was indicted in June 2003 for the felony offense of "Wrongful Removal of Timber—More Than $1,000.00." The indictment alleged that Mr. Legg entered upon the Bruner property and cut down two red oak trees that were valued over at $1,000.00, in violation of *W.Va.Code*, 61-3-52 [2001]. The indictment made no mention of Mr. Legg acting as a principal in the second degree, or of any involvement in the crime by any other parties.

At trial, Mr. Legg did not deny cutting down the trees but insisted that he only did so at Mr. Holland's request. Mr. Legg testified that he believed the trees belonged to Holland's father. Mr. Legg further admitted that the check from Jayfor Lumber had been made out to him, but said that it was only because he had previously done business with the company, and thus had paperwork on file. Mr. Holland had not sold trees to the company before, and the two men did not

want to have to wait for Holland to fill out the appropriate forms. However, Mr. Legg testified that after cashing the check, all the money went to Mr. Holland, who then paid Legg $100.00 for his help. Mr. Hunter, from whom Mr. Holland rented the chainsaw and skidder, testified that Holland gave him $400.00 in cash shortly after the trees had been sold, as payment for the equipment.

Mr. Holland, who testified for the State prior to Mr. Legg's testimony, repeatedly invoked his 5th Amendment rights, but the prosecution was able to admit his prior statement to Officer Johnson as a statement against interest made by an unavailable witness, and this ruling is not challenged on appeal.[3]

After resting its case, the prosecution requested an instruction on aiding and abetting. The State had not made any mention of the involvement of another party during its opening statements. It appears that the State decided to pursue a conviction based on this alternative theory only after Mr. Holland testified.

## II.

### *Standard of Review*

■ Mr. Legg has assigned several points of error in this appeal. First, Mr. Legg asks this Court to review the sufficiency of the indictment. We have held that "[g]enerally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syllabus Point 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996); Syllabus Point 3, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999).

■ Mr. Legg also asks this Court to review the circuit court's instructions to the jury on finding Mr. Legg guilty as a principal

---

2. While Mr. Legg contends on appeal that the actual location of the boundary line was never established, it is clear from the record that all parties conceded during the trial that the two trees were, in fact, growing on Mr. Bruner's property.

3. Despite Mr. Holland's facially suspicious involvement in the events at issue, no charges were brought against Mr. Holland.

in the second degree. "[T]he question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, in part, *State v. Brooks,* 214 W.Va. 562, 591 S.E.2d 120 (2003).

Finally, we are asked to review the circuit court's order denying Mr. Legg's motion for a new trial. In *State v. Vance,* we said:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000).

### III.

### *Discussion*

### A.

Validity of the Indictment and Issuance of the Aiding and Abetting Instruction

In his appeal, Mr. Legg advances two intertwined arguments in which he contends that the circuit court violated his rights by allowing the jury to be instructed that they could find him guilty as either a principal in the first degree or as a principal in the second degree. Mr. Legg argues that because he was indicted only as a principal in the first degree, then either the indictment was insufficient or the jury instructions were improper.

#### 1. Validity of the Indictment

■ Mr. Legg asserts that, under the doctrine of *State v. Wallace,* 205 W.Va. 155, 517 S.E.2d 20 (1999), the indictment for "Wrongful Removal of Timber—More than $1,000.00" was insufficient to support his conviction. Mr. Legg does not contend that the indictment is invalid on its face, but rather that the indictment became invalid when the State requested and received instructions allowing the jury to convict Mr. Legg as either

a principal in the first degree or as an aider and abettor.

In *State v. Wallace,* we held that in order for an indictment to be sufficient under art. III, § 14 of the *West Virginia Constitution* and Rule 7(c)(1) of the *West Virginia Rules of Criminal Procedure,* the indictment must (1) state the elements of the offense charged; (2) put the defendant on fair notice against the charges which he or she must defend; and (3) enable a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy. *Id.* at Syllabus Point 6. We further stated that an "[a]ssessment of the facial sufficiency of an indictment is limited to its 'four corners,' and, because supplemental pleadings cannot cure an otherwise invalid indictment, courts are precluded from considering evidence from sources beyond the charging instrument." *Id.* at Syllabus Point 2. Mr. Legg contends that because he was indicted only as a principal in the first degree and not as an aider and abettor, the indictment did not set forth all of the elements of the offense, and did not put him on fair notice of all of the charges against which he had to defend.

■ In making this argument, Mr. Legg discounts the well-established law surrounding convictions based on aiding and abetting. *W.Va.Code,* 61–11–6 [1923] provides that "[i]n the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree...." Thus, there is no legal distinction between a conviction as a principal in the first degree and a conviction as an aider and abettor; the punishment is the same for each. Based on this logic, and in order to prohibit defendants from successfully defending against an indictment by proving that they were an aider and abettor rather then the principal in the first degree (or vice versa), we have explicitly declared that the inclusion of separate language in an indictment charging aiding and abetting is not required. *State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980).

In *State v. Petry* we held that "the prior common law rule requiring that aiders and abettors or accessories before the fact be indicted as such is abolished and, hereafter, a

general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact." *Id.* at Syllabus Point 1.

We have subsequently found that aiding and abetting instructions are proper in cases in which, although the defendant was not indicted as an aider and abettor, the evidence adduced at trial was sufficient to support an aiding and abetting conviction. *E.g., State v. Duncan,* 179 W.Va. 391, 395, 369 S.E.2d 464, 468 (1988); *State v. Reedy,* 177 W.Va. 406, 415, 352 S.E.2d 158, 168 (1986).

Finally, we have held that the determination of whether a defendant acted as a principal in the first degree or second degree is a question of fact that should be determined by a jury. *State v. Ashcraft,* 172 W.Va. 640, 646–47, 309 S.E.2d 600, 607 (1983). We therefore have found that it may be appropriate for the prosecution to proceed on both alternate theories during trial, in order to allow the question to be put to the jury. *Id.*

In order to reconcile these holdings with the issue in this case, Mr. Legg urges this Court to find that *State v. Wallace, supra,* modifies *State v. Petry.* In *Wallace* we considered whether or not the omission of the term "burglariously" was fatal to an indictment for burglary. We found that the adoption of Rule 7(c)(1) of the *West Virginia Rules of Criminal Procedure* liberalized West Virginia's pleading requirements, and that as long as an indictment adequately informs the accused of the nature of the charge and the elements of the offense, the omission of a particular term will not be fatal to an indictment. *Wallace,* 205 W.Va. at 161–62, 517 S.E.2d at 26–27. *Wallace* was not a case about the inclusion or exclusion of "aiding and abetting" language in an indictment, and we do not believe that *Wallace* was intended to transform our well-settled law in this area.

Mr. Legg is correct that jury instructions on aiding and abetting include an additional required factual finding that is not included in the instructions on being a principal in the first degree; namely, that the defendant assisted another party or parties in the illegal act. However, while this may appear to be inconsistent with *Wallace,* which requires that all elements of the crime be set forth in the indictment, we decline to hold that *Petry* and its progeny have been modified by *Wallace.* Instead, we look to the policies behind these two rules to ensure that justice is not compromised by our current approach.

As discussed above, *Petry* and the cases that follow it were designed to eliminate the miscarriage of justice that occurs when a defendant is acquitted of a crime in which they were indicted as either a principal in the first degree or a principal in the second degree, but where the evidence adduced at trial shows that the defendant was involved in the other capacity. Because the punishment is the same for both types of involvement, we have found that it is absurd to allow a defendant to successfully defend against a charge of being a principal in the first degree by proving that he or she was, in fact, an aider and abettor. *See Petry,* 166 W.Va. at 158, 273 S.E.2d at 350.

In *State v. Ashcraft* we referred to this common law indictment requirement as "an anachronistic technicality which allowed the guilty to go free." 172 W.Va. at 646, 309 S.E.2d at 606. We have further found that the nature of a defendant's involvement in a crime may not be fully evident until witnesses have been examined and cross-examined during the trial. *Petry,* 166 W.Va. at 158, 273 S.E.2d at 350. Thus, we decline to return to the outdated common law rule that principals in the second degree must be indicted as such.[4]

---

**4.** In holding that an indictment as a principal in the second degree is not necessary for a conviction as such, West Virginia is aligned with federal law and the law of many states. In *Muhammad v. Commonwealth,* 619 S.E.2d 16, 67 (Va. 2005), Justice Agee wrote in his concurrence: "The common law classification of criminal perpetrators that distinguished between principals in the first and second degree has become of limited significance in modern times. Nearly all jurisdictions have enacted provisions ... which erase the distinction between principals of the first and second degree by treating both categories of criminal actors as principals in the first degree for purposes of indictment, trial, conviction, and punishment." *See, e.g., Owens v. State,* 161 Md.App. 91, 867 A.2d 334 (2005); *State v. Contreras,* 268 Neb. 797, 688 N.W.2d 580 (2004); *U.S. v. Osborne,* 286 F.Supp.2d 891 (E.D.Tenn. 2003); *Hollins v. State,* 799 So.2d 118 (Miss.Ct.

However, as pointed out by Mr. Legg, the rule of *State v. Wallace* also has a strong policy foundation. By requiring that all elements of a charge be set forth in the indictment, we attempt to ensure that a defendant is given adequate notice to prepare a defense against the crimes charged. Article III, § 14 of the *West Virginia Constitution* says that in all criminal trials, "the accused shall be fully and plainly informed of the character and cause of the accusation." In Syllabus Point 1 of *State v. Furner*, 161 W.Va. 680, 245 S.E.2d 618 (1978), we said that an indictment must "clearly state[ ] the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense." Therefore, there is at least theoretical merit to Mr. Legg's argument that when the State asked for the instruction on aiding and abetting only after they finished putting on their case, Mr. Legg was handicapped in adequately defending against an unexpected charge.

In *Petry* we found that eliminating the requirement that a defendant be indicted as an aider and abettor did not impinge upon a defendant's right to be fully informed of the charges against him, because "[w]e believe that the defendant's right to be fully informed of the crime charged in the indictment under W.Va. Const., art. III, sect. 14 will be fully protected, particularly in light of our liberalized rules on criminal discovery. . . ." 166 W.Va. at 155, 273 S.E.2d at 348. Because *Petry* and its progeny should put all defendants in West Virginia on *constructive notice* that an aiding and abetting instruction may be requested, even in the absence of an indictment thereon, we do not believe that the policies behind *State v. Wallace* are disregarded by upholding the rule established in *Petry*.

### 2. Prejudice Suffered by the Addition of the Aiding and Abetting Instruction

■ While upholding *Petry*, we recognize the possibility that, in absence of *actual notice* of the prosecution's intention to pursue a theory of and conviction for aiding and abetting, a defendant might, in a given case, be unfairly prejudiced by the prosecution's request for an aiding and abetting instruction after the trial has begun. In situations in which actual prejudice does occur, the defendant should be afforded an appropriate remedy.[5]

Many other jurisdictions that allow a defendant to be convicted as a principal in the second degree after having been indicted only in the first degree provide some protection to the defendant by examining whether or not the giving of that instruction will prejudice the defendant. In *U.S. v. Smith*, the court stated:

> The well established rule in this and other circuits is that a "defendant may be indicted for the commission of a substantive crime and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor." . . . An aiding and abetting jury instruction is appropriate where the prosecution makes it known that it intends to proceed on a theory of aiding and abetting and the evidence so warrants. . . . A principal purpose of the first requirement is to avoid unfair surprise to the defendant.

727 F.2d 214, 217–18 (2nd Cir.1984) (internal citations omitted).

Following a similar line of reasoning, the court in *Giraud v. U.S.*, 348 F.2d 820, 822 (9th Cir.1965) found that issuing instructions on aiding and abetting did not prejudice a defendant who was put on notice of the State's intentions, when the "opening statement of the prosecution to the jury sufficient-

App.2001); *State v. Bunyea*, 44 Or.App. 611, 606 P.2d 685 (1980); *State v. DeFoe*, 280 N.W.2d 38 (Minn.1979); *Albritton v. State*, 32 Fla. 358, 13 So. 955 (1893).

5. As discussed *infra*, appropriate relief may take several forms. For example, a trial court may grant a continuance to allow the defendant to prepare for the change in theory by the state, a trial court may permit prosecution witnesses to

be recalled in order to allow appropriate cross-examination by the defense, or, where no other remedies exist, a trial court may be justified in granting a new trial to the defendant. As also discussed *infra*, the lack of pre-trial notice to Mr. Legg in the instant case did not cause him prejudice, and permitting the jury to consider the aider and abettor instruction was not error.

ly apprised the defense of the *modus operandi* that the prosecution expected to prove."

Thus, in determining whether or not prejudice has occurred, it is important that the trial court examine whether or not the defendant was, or should have been, aware of the State's intentions, even in absence of actual notice.

While no West Virginia cases make this rule explicit, in *State v. Ashcraft* we do discuss the potential for prejudice due to unfair surprise. In *Ashcraft*, the defendant sought to require the State to specify whether they planned to prosecute the defendant as a principal in the first degree or in the second degree. 172 W.Va. at 646, 309 S.E.2d at 606. In finding that the prosecution was not required to divulge the requested information, we also recognized that the appellant could not legitimately claim prejudicial surprise as a result of not knowing upon which theory the State planned to proceed. *Id.* The very fact that the defendant requested such information prior to the trial shows that the defense was aware that the State might proceed on the alternative theory.

We find additional support for this approach in West Virginia's case law regarding amendments to indictments. In *State v. Adams*, we said "[a]n indictment may be amended by the circuit court, provided the amendment is not substantial, is sufficiently definite and certain, does not take the defendant by surprise, and any evidence the defendant had before the amendment is equally available after the amendment." Syllabus Point 2, in part, 193 W.Va. 277, 456 S.E.2d 4 (1995).

We recognize that Rule 7(e) of the *West Virginia Rules of Criminal Procedure* is applicable to amendments of indictments as well as amendments of information. *Adams*, 193 W.Va. at 282, 456 S.E.2d at 9. Rule 7(e) states "The Court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." In *Adams*, we defined prejudice as surprise or lack of adequate notice. 193 W.Va. at 282, 456 S.E.2d at 9. While we failed to find prejudice or other problems with the proposed amend-

ment in *Adams*, that case and Rule 7(e) make it clear that an amendment to an indictment should not be allowed where prejudice occurs.

However, because we do not consider the addition of an aiding and abetting instruction to be an amendment to an indictment, such a strict rule with regard to the decision to allow such an instruction is not required. Rather than denying such an instruction, in the event that prejudice may occur, the trial court should take necessary steps to remedy any prejudice; for example, by granting a continuance or permitting the recall of witnesses. It is conceivable that a new trial may be an appropriate remedy if the prejudice cannot be cured otherwise.

In addition to the element of unfair surprise, we believe that several other factors may be considered for the purpose of determining whether or not a defendant has suffered actual prejudice due to the prosecution's belated injection of an alternative theory upon which a conviction may be based. These factors may include but are not limited to (1) whether or not the defendant can show that he or she might have framed his or her defense differently in light of the alternative theory; (2) whether or not the defense presented was sufficient to defend against both alternative theories; and (3) whether or not the defendant took steps to remedy the prejudice—by, for example, requesting a continuance or asking that witnesses be recalled.

When applying these factors to the instant case, we find that Mr. Legg did not demonstrate that he suffered actual prejudice.

At trial, Mr. Legg's defense was that, when he cut down the trees on Mr. Bruner's property, he did not have the appropriate *mens rea* to be found guilty of the felony of "Wrongful Removal of Timber—More Than $1,000.00." (*W. Va.Code*, 61–3–52(a) says that in order to be found guilty of this crime, the person who cut down the timber must have acted "willfully and maliciously and with intent to do harm.") In his defense, Mr. Legg told the jury, in essence, "Yes, I did cut down the trees, but I did not know that the trees belonged to Mr. Bruner, and instead I

believed that they belonged to Mr. Holland." Thus, Mr. Legg essentially claimed that he did not cut down the trees "maliciously" or "with intent to do harm."

In the jury instructions, the court made clear that to find Mr. Legg guilty as an aider and abettor, the jury must find that Mr. Legg had the same criminal intent as the person acting as the principal in the first degree. Therefore, had the jury believed Mr. Legg's version of the events, they could not have found him guilty as either a principal in the first degree or as an aider and abettor.

Mr. Legg's defense is analogous to the facts of *State v. Walker*, a case in which the State initially proceeded against the defendant on a theory of premeditated murder, but then decided at the end of the trial to seek jury instructions on felony murder and the underlying felony of arson. 188 W.Va. 661, 425 S.E.2d 616 (1992). The defendant appealed, claiming, among other things, that this change in theory precluded him from raising a possible defense. *Id.* However, the defendant in *Walker* had offered an alibi defense at trial. We said:

> [W]e fail to see how he [the defendant] was harmed by the State's election to charge him only with felony murder. He defended both the arson charge and the premeditated murder charge, with an alibi defense. Although Mr. Walker could have been prejudiced had he chosen to make a self-defense claim (or some other justifiable homicide defense where he would have had to admit the killing), Mr. Walker was not deprived of the opportunity to raise any defenses nor was he tricked into admitting something as a defense.

188 W.Va. at 667, 425 S.E.2d at 622. Because an alibi defense and a lack of *mens rea* defense are similar in that both would apply regardless of the theory of the State, we find the reasoning in *Walker* to be persuasive here.

In addition, Mr. Legg has failed to provide us with any examples of how he would have proceeded differently during the trial, had he known of the State's intention to ask for the aiding and abetting instruction. Mr. Legg suggests that because the State did not announce its intention until after all its witnesses had been called, Mr. Legg was deprived of cross-examining the State's witnesses on this additional theory. However, because Mr. Legg provided us with no examples of how he would have proceeded differently, we decline to find that actual prejudice occurred. *See State v. DeVerney*, 592 N.W.2d 837, 847 (Minn.1999).

Furthermore, at the point when Mr. Legg learned of the State's intention to request the aiding and abetting instruction, Mr. Legg could have requested that the circuit court permit him to recall the State's witnesses, so that he could reexamine them in light of the new theory. He did not do so. Therefore, Mr. Legg did not attempt to remedy the prejudice that he now claims tainted the trial.

Finally, Mr. Legg did not request a continuance after learning of the State's intention to present an alternative theory of the case. While there is little precedent in West Virginia on this issue, research shows that other states commonly find that a continuance is appropriate in this type of situation.

In *State v. Gonzales*, the defendant was charged with first-degree murder. 56 P.3d 969, 971 (Utah App.2002). After the prosecution rested its case, it requested an instruction allowing the jury to find the defendant guilty as an accomplice to murder. *Id.* The Utah Court of Appeals determined that although the instruction was proper in that case, had the State changed its theory of the case, then a continuance should be granted in order to allow the defendant to tailor his defense to meet the State's amended theory. *Id.* at 973. *See also, Todd v. State*, 566 N.E.2d 67 (Ind.App.1991) (a pre-trial amendment did not cause prejudice where the trial court issued a five week continuance); *State v. Purdom*, 106 Wash.2d 745, 725 P.2d 622 (1986) (a continuance must be granted when the amendment occurs the day before the trial is to start). Thus, if Mr. Legg had been able to demonstrate to the trial judge that he needed time to re-prepare his defense in light of the State's requested instructions, it may have been proper for the circuit court to grant him a continuance. But none was requested.

**528**

For the reasons discussed above, we now hold that where a defendant in a criminal trial can demonstrate that he or she has suffered actual prejudice as a result of the prosecution's mid-trial decision to pursue a conviction as a principal in the second degree (aider and abettor) or the crime charged, the trial court should grant any necessary and appropriate remedies; remedies may include continuances, the right to recall witnesses, or other actions that will alleviate any unfair prejudice. If such trial remedies are insufficient to cure the prejudice, a mistrial may be declared and a new trial awarded. However, in examining the instant case, we fail to find evidence that Mr. Legg suffered actual prejudice, and thus decline to order that he receive a new trial.

### B.

### Prosecution May Pursue Multiple Theories of the Case

In an extension of his previous arguments, Mr. Legg contends that the State should have been required to choose the theory upon which it wished to proceed prior to the issuance of jury instructions. As discussed above, we have previously held that the prosecution does not have to choose between alternate theories, and that whether a defendant acted as a principal in the first or second degree is a question of fact for the jury to decide. *Ashcraft*, 172 W.Va. at 646–47, 309 S.E.2d at 607; *State v. Duncan*, 179 W.Va. 391, 395–96, 369 S.E.2d 464, 468–69 (1988). Thus, we find that the circuit court properly allowed the instructions on both principal in the first degree and principal in the second degree to be given to the jury.

### C.

### Defect in the Verdict Form

The jury verdict form used in this case provided three options for the jury to choose among: (1) Guilty of Wrongful Removal of Timber—More Than $1,000.00, (2) Guilty of Wrongful Removal of Timber— Less Than $1,000.00, or (3) Not Guilty. The

jury selected option number one, thus convicting Mr. Legg of "Wrongful Removal of Timber—More Than $1,000.00." From the verdict form, it is impossible to tell whether or not the jury concluded that Mr. Legg was a principal in the first degree or second degree.[6]

We have long held that when a defendant is prosecuted on multiple, separate charges, a jury verdict should distinguish between the charges so that the defendant knows the charge upon which he was convicted. *E.g., State v. Taft*, 143 W.Va. 365, 366, 102 S.E.2d 152, 154 (1958); *State v. Gargiliana*, 138 W.Va. 376, 386, 76 S.E.2d 265, 270 (1953).

However, we do not agree with Mr. Legg's contention in the instant case that the jury was instructed on two separate felonies, with different elements of proof. Rather, as explained above, one felony charge was at issue, and there were two separate methods of proof upon which Mr. Legg could be convicted of that felony. Therefore it was not necessary to provide separate options on the jury form for two separate charges.

The question remains, however, whether or not Mr. Legg was entitled to be informed of which theory the jury relied upon in convicting him.

In Syllabus Point 5 of *Stuckey v. Trent*, a murder case in which the prosecution proceeded upon theories of first degree murder and felony murder, we held that a jury form does not have to distinguish between murder in the first degree and felony murder, as long as the State does not proceed against the defendant upon the underlying felony. 202 W.Va. 498, 505 S.E.2d 417 (1998). If it is not reversible error to fail to distinguish between the two theories of a prosecution's case on a jury verdict form in a first-degree murder trial, then it is difficult to imagine that such failure to distinguish would constitute reversible error in the instant case.

Because the punishment for the felony of "Wrongful Removal of Timber—More than $1,000" remains the same whether the defendant acted as the principal in the first degree

6. Because of the significant gaps in the record, we are not persuaded by the State's argument that Mr. Legg waived this issue at trial.

or as the aider and abettor, we do not believe that the verdict form was inadequate.[7]

## D.

### Evidence of the Boundary Line

 Mr. Legg argues that there was insufficient evidence offered at trial to prove the actual location of the boundary line between the Holland and Bruner properties, as required under *State v. Williams*, 209 W.Va. 25, 543 S.E.2d 306 (2000). We do not find it necessary to reach this issue, because Mr. Legg did not properly preserve this issue for appeal.

Mr. Legg did not raise this issue during the trial and did not raise this issue in his motion for a new trial; nor did he raise this issue in his petition for appeal to this Court. Mr. Legg raises this issue for the first time in his appellate brief. This Court has repeatedly declined to hear issues on appeal that were not developed, although the opportunity existed, at the trial court level. "As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there." Syllabus Point 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). In Syllabus Point 2 of *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998), we wrote "As a general matter, a defendant may not assign as error, for the first time on direct appeal, an issue that could have been presented initially for review by the trial court on a post-trial motion." Finally, in *Dean v. WV Dept. of Motor Vehicles*, we declined to consider an issue raised for the first time in the appellant's brief filed in support of his petition to this Court. 195 W.Va. 70, 464 S.E.2d 589 (1995). Thus, with regards to whether or not the boundary line in this case was properly established during trial, we find that the issue was not properly raised for decision by this Court.

## IV.

### *Conclusion*

For the reasons discussed above, this Court does not find that the circuit court abused its discretion in denying Mr. Legg's motion for a new trial. We therefore affirm the December 2, 2003 order of the Circuit Court of Greenbrier County.

Affirmed.

---

7. While we decline to reverse Mr. Legg's conviction on the basis of the jury verdict form in the instant case, circuit courts are encouraged to use jury verdict forms that are fashioned in such a way that a convicted defendant and their counsel may be clearly apprised as to the particular theory upon which the jury relied.