# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0453 (**Morgan County CC-33-2020-F-19)

**Angel Lynn McCoy,**
**Defendant Below, Petitioner**


# MEMORANDUM DECISION


Petitioner Angel Lynn McCoy, by counsel Nicholas Forrest Colvin, appeals the Circuit Court of Morgan County's May 13, 2021, sentencing order, which also denied petitioner's post-trial motions following her convictions for fraudulent schemes, attempted fraudulent schemes, and conspiracy. Respondent the State of West Virginia, by counsel Patrick Morrisey and Lara K. Bissett, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and co-defendants Lindsay A. Wruck ("Wruck"), Joseph A. Watkins ("Watkins"), and David W. Sions, were each indicted by the Morgan County Grand Jury on one count of fraudulent schemes, one count of attempted fraudulent schemes, and one count of conspiracy on June 17, 2020. During petitioner's August 20, 2020, pretrial hearing, petitioner moved to continue the trial because two of her co-defendants were being held on criminal charges in Florida so they were unavailable to testify at her trial. The circuit court noted that it was "not going to just keep punting this case down the road waiting to see if these two . . . co-defendants" are available to testify at trial. The circuit court suggested that both of the absent co-defendants would likely assert their Fifth Amendment rights against self-incrimination if called to testify. However, the circuit court continued the trial to November 4, 2020.

Petitioner did not appear for the October 15, 2020, pretrial hearing, and when her bail bondsman contacted her, petitioner informed him that she "was an hour away." When she failed to appear after approximately an hour and a half, the court issued a capias for her arrest. Petitioner also did not appear for the November 4, 2020, scheduled trial; according to the record, she

1

informed her attorney on November 3, 2020, that she had been exposed to COVID-19 and was quarantined. However, neither the Morgan County Health Department nor the Hampshire County Health Department indicated that they had petitioner on any of their quarantine lists. The court informed petitioner's trial counsel that petitioner was to appear at the courthouse at which time a rapid COVID-19 test would be administered, and her counsel confirmed that he relayed the message. Petitioner replied by text message that she did not have transportation to the courthouse so the court again issued a capias for petitioner's arrest.

On January 15, 2020, petitioner filed a motion to disqualify the judge due to the issuance of the capiases, asserting that there was a "potential appearance of impropriety" for the judge to preside over the capiases and the criminal matter. She also argued that she had a "longstanding history" with the judge, as the judge had been the prosecuting attorney in a 2014 case involving petitioner's children. The circuit court denied the motion to disqualify, but it forwarded the motion to this Court, informing this Court that it had no bias or prejudice against petitioner. This Court issued an order denying petitioner's request.

Petitioner's trial began on March 2, 2021, during which Susan Webster, a co-owner of Herb's Quality Used Cars and Trucks ("Herb's Auto"), testified that on March 5, 2020, petitioner and three others came onto the Herb's Auto's lot in a U-Haul truck, at which time petitioner inquired about the prices of certain cars, including a 2015 Mazda 3. While petitioner was the primary contact with Mrs. Webster, she did not ask about a warranty or vehicle history and did not request a test drive. Petitioner left her cell phone number with Mrs. Webster because Mrs. Webster needed input from her husband, who was gone to an auto auction, on a bottom-line price for the car. Mr. Moss, Mrs. Webster's husband, called petitioner and made arrangements to meet her at 8:00 p.m. that evening. Petitioner purchased the vehicle with a check in the amount of $10,500. However, when Mrs. Webster took the check to the bank, she learned that it was a fraudulent check. Mrs. Webster then went to the West Virginia State Police barracks to report the fraud.

Mr. Moss testified that once the U-Haul dropped petitioner off at the lot, it left the premises. Once inside his office, Mr. Moss made a copy of petitioner's driver's license and recorded information from petitioner, including her address and social security number. Mr. Moss ran a credit check to confirm petitioner's address and contacted petitioner's purported automobile insurance company. Petitioner then presented a check in her name in the amount of $10,500 to Mr. Moss. However, the check did not clear, and the bank informed him that the check was fake. Petitioner later contacted Mr. Moss asking what was going on after she was reportedly informed by her mother that police were seeking a warrant against her if she did not return the car. When Mr. Moss called petitioner, she agreed to return the vehicle that night. However, she failed to return the vehicle.

Anthony Yost of Affordable Auto testified that on March 5, 2020, he had a similar encounter with petitioner and three individuals in a U-Haul truck who were interested in two vehicles, including a Chevrolet Tahoe for which he quoted the group a price of $9,500. The group left the lot but called later that evening to say they would be returning. According to Mr. Yost's testimony, they presented a check for $9,500 that appeared to be from the account of David Sions, but a friend told Mr. Yost that the check was fake. When the friend took the check into a back room to call the bank, one man from the group disappeared. Mr. Yost then contacted police.

2

Dep. Jeremy Burkholder of the Morgan County Sheriff's Department testified that he received a complaint from Mr. Yost on March 5, 2020, and that Mr. Yost provided a description of the U-Haul truck. Dep. Burkholder later identified the vehicle on Route 522 and initiated a traffic stop, during which he obtained identification ("ID") from Watkins and Wruck. A K9 unit was brought in, and the dog alerted to the presence of drugs. After Mr. Watkins and Ms. Wruck were removed from the vehicle, the vehicle was searched and two large folders were found under the driver's seat. One of those folders was marked "high security checks" and contained numerous blank checks. The other folder had multiple tabs marked with names, and each tab contained numerous printed business checks, personal checks, cashier's checks, and payroll checks. Petitioner's full name was printed on some of the printed checks found in the truck, and one of the cashier's checks was made out to Affordable Autos by petitioner. That check was dated March 5, 2020, and the driver's license number on the check was a long-expired license for petitioner. Dep. Burkholder testified that Watkins and Wruck told him that the computer and printer/scanner found in the truck belonged to petitioner. They also told Dep. Burkholder that they were on their way to petitioner's house at that time of the stop.

Sgt. Joseph Flanigan of the West Virginia State Police testified that the driver's license number listed on the Wells Fargo check that petitioner presented to Mr. Moss actually belonged to David Sions. He further testified that the vehicle from Herb's Auto was eventually recovered in Florida and that Watkins's and Wruck's licenses had Florida addresses on them. However, he testified that Mr. Sions was eliminated as a suspect when it was determined that Clifton Clingerman was the person using David Sions's identity.

The owner and an employee of a local grocery store testified regarding petitioner's February 16, 2020, presentation of a Target payroll check in the amount of $796.42 made out to petitioner. Petitioner used the check to purchase items but received cash back for the balance. That check was returned as a fraudulent check so the grocery store owner contacted the police. Similarly, an employee of a convenience store in Virginia testified that on February 14, 2020, petitioner presented the store with a Target payroll check in the amount of $796.42 made out to petitioner.

According to testimony from Cpl. Bowland of the West Virginia State Police, after reading petitioner her *Miranda*[1] rights, petitioner admitted that

> Joe [Watkins] asked me if I would cash them a check and I would get half the money. I went in the store, spoke to the lady. She said I would have to spend money in the store if she cashed it. So I got [certain items] and I got $300 and some in cash. I got $125 and [Watkins and Wruck] got the rest . . . .

Petitioner guessed that Watkins made the checks, but she denied seeing anyone make them. Petitioner specifically denied knowing that the check she presented to Herb's Auto was fraudulent, though she admitted that she knew Watkins and Wruck were creating fake payroll checks. While she registered the car from Herb's Auto in her name, using her father's address in Virginia, she

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1996).

told Cpl. Bowland that Watkins instructed her to file for a lost or duplicate title and send it to him in Florida.

At the close of the State's case, petitioner made a motion for a judgment of acquittal on the attempted fraudulent schemes charge, arguing that the State had failed to prove that petitioner was present when Mr. Yost was defrauded. The court denied that motion, concluding that it was a question of fact for the jury to decide.

When petitioner testified at trial, she stated that she had known Watkins for several years and that in December of 2019 or January of 2020, Watkins and Wruck came to petitioner's home with a man named "David Sions." Petitioner testified that she had been through three IDs in four months because they "were misplaced slash stolen." She admitted going with the others to Herb's Auto to look at cars. Watkins told petitioner that he had money from an inheritance but needed a car to get back to Florida. She further testified that she went to help Watkins because she had a prior business relationship with Mr. Moss and Watkins did not have an ID to make the purchase. While she admitted that the group went to Affordable Auto, she denied having any contact with Mr. Yost, asserting that while Watkins and Wruck test-drove the vehicle, she and Mr. Clingerman sat in a truck and read a manual about its supercharger. According to petitioner, the group went to a third dealership where petitioner attempted to buy a car for $2,500, but she was not approved for the purchase. The group then went to a hotel where they used drugs. At some point, Watkins and Wruck asked petitioner to contact Mr. Moss about the Mazda, and petitioner complied, negotiating the deal. Petitioner and Watkins returned to Herb's Auto. Petitioner testified that she called an 800 number listed on the check to verify that it was real and that she obtained insurance on the vehicle for which she used a prepaid debit card. After the transaction was complete, petitioner met Watkins and Wruck at the hotel, gave them the keys, and they drove petitioner to meet a friend in Maryland. She acknowledged that the computer tower found in the U-Haul truck was her grandmother's and that, at some point, the tower and printer/scanner had been in petitioner's camper trailer on her grandmother's property.

Petitioner further testified that after she learned that police were obtaining a warrant for her arrest if the car was not returned, she contacted the police. She claimed that she did not have the car at that time but that she was trying to get it back from Watkins and Wruck. However, she learned three days later that they were incarcerated in Florida. She denied signing or presenting the Target payroll check to the convenience store but asserted her Fifth Amendment rights regarding endorsing and presenting the Target payroll check to the grocery store. She eventually admitted that she presented the check to Mr. Moss at Herb's Auto but continued to deny any knowledge that the check was fraudulent. On cross-examination, the State asked petitioner if she would like to call the 800 number on the check that she claimed she previously called to verify; petitioner declined, acknowledging that her attorney had tried to call but the message was not what she purported it to be. The State also inquired as to why petitioner attempted to verify the validity of the check on March 5, 2020, if she did not have reason to believe it was fake, but she maintained that she did not believe it was fake due to Watkins's representation that he had come into an inheritance. According to petitioner's testimony on cross-examination, she tried to make a claim for the Mazda as a stolen vehicle under her auto insurance policy, but the insurance company refused the claim because petitioner failed to make a police report. She admitted that she told Cpl. Bowland that she knew the Target payroll checks were fake so the prosecutor expressed disbelief

4

that petitioner believed the cashier's check she presented to Herb's Auto was real. Petitioner did not call any other witnesses.

Following the presentation of evidence, the circuit court informed the parties that "it occurred to [the court] that there should probably be an instruction for accessory before the fact as well as [a] principal instruction and [it] did add that right before the instruction for the principal instruction." Petitioner objected, arguing that the instruction regarding accessory before the fact was unnecessary because "neither party has submitted that or asserted that. Neither party has argued it." The circuit court then instructed the jury as follows:

> The [c]ourt instructs the jury that an accessory before the fact need not necessarily have intended the particular crime committed by the principal. An accessory is liable for any criminal act, which in the ordinary course of things, was the natural and probable consequence of the crime that he procured, advised or commanded [sic] other such consequence may not have been intended by him.

> The [c]ourt instructs the jury that a person who is an absolute perpetrator of a crime is a principal in the first degree. The [c]ourt further instructs the jury that a person who is actually or constructively present at the scene of a crime at the time as [sic] the criminal act or the absolute perpetrator who acts with shared criminal intent contributing to the criminal act of the absolute perpetrator is an aider and abettor and a principal in the second degree and as such may be criminally liable for the criminal acts as if he were the absolute perpetrator of the crime.

The jury convicted petitioner of one count of fraudulent schemes, one count of attempted fraudulent schemes, and one count of conspiracy.

On March 12, 2021, petitioner filed a motion for judgment of acquittal and motion for a new trial. After hearing argument on that motion, the circuit court denied the same in its May 13, 2021, sentencing order, "for the same reasons that were previously address[ed] on the record." During petitioner's sentencing hearing, the State requested that petitioner's sentences run consecutively and that restitution in the amount of $10,500 be ordered to Herb's Auto. The court then sentenced petitioner to the following terms of incarceration: one to ten years for the felony offense of fraudulent schemes, one to three years for the felony offense of attempted fraudulent schemes, and one to five years for the felony offense of conspiracy, all sentences to run consecutively. The circuit court also denied petitioner's motion for supervised probation, ordered that petitioner participate in and complete a residential substance abuse treatment program, and ordered that she pay restitution to Herb's Auto in the amount of $10,500. Petitioner was granted credit for time served. Petitioner appeals from the circuit court's May 13, 2021, sentencing order, including the denial of her post-trial motions.[2]

---

[2] Petitioner's "Statement of Facts" is a single page that provides only the barebones procedural information with no information related to the actual crimes or what took place during trial. This is despite the fact that this Court issued a September 13, 2021, notice of intent to sanction

(Continued . . .)

"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010) (quoting Syl. Pt. 1, in part, *State v. Lucas,* 201 W. Va. 271, 496 S.E.2d 221 (1997)). In Syllabus Point 2 of *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973), we held that, "[o]n an appeal to this Court[,] the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court."

On appeal, petitioner sets forth four assignments of error. First, she argues that the circuit court committed reversible error by improperly instructing the jury on "accessory before the fact." Petitioner correctly asserts that a defendant can only be convicted of the offense for which she was fully and plainly charged. W. Va. Const., art. III, §§ 4, 14. When the circuit court, sua sponte, added an instruction addressing accessory before the fact, petitioner's counsel objected, arguing, in part:

> It is not as if there's something that she – we haven't received evidence, I guess, to support that is what I'm saying to suggest that she did procure, advise or command as listed here. So I would ask that the accessory before the fact be stricken. . . . I do think it would be confusing to the jury to have that as well on top of the other theories. Obviously, no side has argued it or mentioned it to the jury either. It's not been a theory of the case at least that I'm aware of so I don't think the facts have been developed from that to present that to them.

She further argues that she was prejudiced in her ability to present a cohesive, coherent defense and was taken by surprise by the instruction.

As this Court has found,

> [a] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they

due to petitioner's earlier filed brief that lacked a proper statement of the case, in addition to issues regarding the appendix. In that notice, petitioner was directed to file a brief and appendix that complied with this Court's rules no later than September 24, 2021. Petitioner received a short extension and submitted an updated petition on September 29, 2021; however, this new brief also failed to comply with the West Virginia Rules of Appellate Procedure. We, therefore, remind petitioner's counsel of the mandates of Rule 10(c)(4) of the West Virginia Rules of Appellate Procedure:

> *Statement of the Case*: Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error.

understood the issues involved and were not mis[led] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We have also stated that "if an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise *de novo* review." *Id.* at 671, 461 S.E.2d at 177.

Upon our review of the record before us, we find that the jury instructions read by the circuit court did not constitute an improper amendment of the indictment, did reflect a correct statement of the law, and were supported by the evidence adduced at trial. Therefore, the circuit court did not abuse its discretion or otherwise err in instructing the jury on "accessory before the fact." The circuit court instructed the jury as to accessory before the fact and principal in the first and second degree; those instructions clearly reflect a correct statement of the law and are in accord with the indictment in which petitioner was charged. As set forth in West Virginia Code § 61-11-6(a), "[i]n the case of every felony, every principal in the second degree and every accessory before the fact shall be punishable as if he or she were the principal in the first degree[.]" In addition,

[w]ith regard to all cases in which the trial shall commence after the date on which this opinion is handed down by this Court the prior common law rule requiring that aiders and abettors or accessories before the fact be indicted as such is abolished and, hereafter, a general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact.

Syl. Pt. 1, *State v. Petry*, 166 W. Va. 153, 273 S.E.2d 346 (1980). Moreover, this Court has held

[a]n indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.

Syl. Pt. 6, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999).

We agree with the State's contention that, pursuant to *Petry*, petitioner was under constructive notice that an aiding and abetting instruction might be appropriate following the presentation of evidence at trial. Thus, petitioner's argument that the circuit court's accessory before the fact instruction acted to actually or constructively amend the indictment fails. In addition, petitioner did not ask for a continuance, to recall witnesses, or for a mistrial related to the instruction; she merely asked that the instruction be stricken. *See* Syl. Pt. 3, *State v. Legg*, 218 W. Va. 519, 625 S.E.2d 281 (2005). Therefore, she did not attempt to remedy the prejudice she now

claims tainted her trial. *Id.* at 527, 625 S.E.2d at 289. Moreover, trial counsel acknowledged that the accessory before the fact instruction "may actually help my client." For these reasons, we find that the circuit court did not improperly instruct the jury as to accessory before the fact.

In her second assignment of error, petitioner argues that the circuit court improperly denied her motion to disqualify the circuit court judge. Petitioner notes that a portion of the argument pertaining to her motion to disqualify the circuit court judge from presiding over her trial was based upon petitioner's charge of failure to appear, though that charge was dismissed after petitioner was sentenced to the charges at issue herein. She contends, however, that the "other portion" of her argument remains. Without citing to the record, she argues that there is no question that petitioner and the circuit court had a longstanding history, as the judge was the prosecuting attorney for Morgan County and acted as the prosecutor in a case related to petitioner's children. Petitioner argues that, given the nature of the maximum sentence petitioner received, "her concerns were made manifest."

At the outset, we note that petitioner's brief argument as to this assignment of error does not comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, as the argument lacks any citation to the record. That rule provides that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

*Id*. Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. While we decline to address the merits of this issue due to petitioner's continued failure to comply with the West Virginia Rules of Appellate Procedure, we note that the circuit court sent petitioner's motion, with an accompanying letter, to this Court in January of 2021. By order entered on January 21, 2021, this Court found that "[u]pon review of said motion and Judge McLaughlin's response thereto, and in accordance with Trial Court Rule 17.01(c), the Chief Justice has determined that Judge McLaughlin's disqualification from presiding over the cases is not warranted."

Petitioner's third allegation of error is that the circuit court erred by denying petitioner's motion to continue the pretrial and jury trial until such time as she could be tried jointly with her co-defendants. Without a single citation to any legal authority, continuing to ignore Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, petitioner states that, ultimately, both co-defendants were brought before the court "during a discrete period of time after" petitioner's sentencing. She contends that it was reversible error for the circuit court to deny the motion to

continue; "[w]hether or not they would have asserted their [F]ifth [A]mendment right is an unknown aspect, however, their ability to be squarely before the [c]ourt in both pre-trial and jury trial proceedings cannot be understated." However, as respondent points out, the record is clear that the circuit court did continue petitioner's trial on August 20, 2020, and twice more before it went to trial on March 2, 2021. Due to petitioner's failure to cite to any legal authority to show that she was entitled to additional continuances, we decline to further address the merits of petitioner's argument as to this issue.

Finally, petitioner contends that she received an excessive sentence that is contrary to the interests of justice. After setting forth three paragraphs of standards, with no analysis, petitioner sets forth a single paragraph of argument. She contends that she received the maximum possible sentence while her co-defendants, who were facing additional charges, each received a "slap on the wrist." In support of this assertion, petitioner points to two pages of the sentencing hearing transcript wherein the circuit court determined that she was not a candidate for alternative sentencing and that petitioner's sentences should run consecutively. She does not cite to the record regarding the co-defendants' sentences.

"Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). "It is not the proper prerogative of this Court to substitute its judgment for that of the trial court on sentencing matters, so long as the appellant's sentence was within the statutory limits, was not based upon any impermissible factors, and did not violate constitutional principles." *Georgius*, 225 W. Va. at 722, 696 S.E.2d at 24. Here, petitioner does not dispute that her sentences are within statutory limits or that the sentences were not based on impermissible factors. Due to her failure to cite to the record for the sentences allegedly imposed upon the co-defendants, this Court is unable to properly address petitioner's proportionality argument. We, therefore, decline to address it. Thus, we find that petitioner's fourth assignment of error is also without merit.

Affirmed.

**ISSUED:** May 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice C. Haley Bunn